1830.<br>White<br>v.<br>Carpenter.

---

## WHITE vs. CARPENTER and others.

A resulting trust cannot be raised in favor of a person, against the intention of the parties.

A bona fide purchaser of trust property from a trustee, without notice of the trust, is not bound to see that the purchase money is applied to the objects of the trust.

In chancery, the general lien of a judgment is controlled by equity so as to protect the rights of those who are entitled to an equitable interest in the lands or in the proceeds thereof.

A party who has a specific equitable lien on real property, or the proceeds thereof, is entitled to a preference over the general lien of a creditor under a subsequent judgment.

Where L. being entitled to one undivided third part of his father's estate, exchanged with W. one half of his interest in said estate for some Virginia lands; and L. conveyed to S. all his interest in his father's estate, in trust to pay W. $3000 out of the proceeds thereof in full satisfaction for the Virginia lands, and if any more was realized out of said estate, the surplus was to be retained by S. as a compensation for his services; and S. afterwards failed and W. filed a bill for the payment of the $3000, or that L.'s estate might be sold to pay the same; and L. then with the consent of W. conveyed said estate to M. in trust to sell the same and in the first place to pay W. his said demand of $3000, and then to pay the residue to certain creditors named in a schedule, provided such creditors released their claims against S. by the 1st May thereafter; and in case any of such creditors refused to execute releases, their share of the residue was to be paid to S. or to

1830.

White
v.
Carpenter.

his assigns; three of the creditors named in the schedule having neglect-
ed to comply with the condition, S. on the 18th May, 1818, conveyed to
H. all the interest intended for those creditors; H. was afterwards dis-
charged under the insolvent act, and his assignees conveyed all his inter-
est in the property to E.; after the conveyance from L. to S. and before
the execution of the trust deed to M., P. F. recovered a judgment against
S. in the supreme court; in May, 1822, E. purchased this judgment for
$328, the amount then due thereon; and at the time of the purchase S.
gave his note to E. for the whole or a part of the judgment, and E. agreed
that if the note was paid, the judgment should only be enforced against
the property conveyed in trust to M.; E. afterwards sold under the judg-
ment all the right of S. in the estate so conveyed to M., and purchased
the same himself for $25; at the sale W. gave notice of his claim for
$3000 upon the estate; it was held that the judgment of P. F. only at-
tached upon the interest S. had in the real estate of L. after satisfying W.'s
debt; and as E. had notice of W.'s claim previous to the sale under the
judgment, the only effect of such sale was to turn E.'s general lien upon
the surplus into a specific lien to the extent of his bid.

May 24th.

ROBERT LYLBURN, of the city of New-York, died in 1814,
possessed of a considerable real and personal estate within
the state of New-York. By his will, after directing the pay-
ment of certain pecuniary legacies, he gave to his wife a part
of the real estate and also an annuity during her life or wid-
owhood in lieu of dower. The residue of his property, both
real and personal, he gave to his son John Lylburn and his
two other children in equal proportions. In March, 1817,
Joseph Willard was in the city of New-York endeavoring to
sell certain large tracts of land in the state of Virginia; and
Augustus Sackett, who then kept an office in that city for
the purchase and sale of lands, was employed by Willard to
assist him in the sale. An arrangement was made by which
Willard was to convey to J. Lylburn a part of his Virginia
lands in exchange for one half of Lylburn's interest in his
father's estate. That interest was conveyed by Lylburn to
Sackett, who was to pay over to Willard $3000 out of the
proceeds thereof, as soon as the same could be realized from
the estate, in full satisfaction for the Virginia lands. And if
a greater sum was received from the interest of Lylburn in
his father's estate, Sackett was to retain the same as a com-
pensation for his trouble and expense in negotiating the ex-
change of property between Lylburn and Willard. Willard
gave a bond to Lylburn, by which he bound himself to con-

1830.

White
v.
Carpenter.

vcy to Lylburn the lands in Virginia when the latter should locate the same; which bond has since been satisfied to the assignee of Lylburn. An order was also drawn by Lylburn and accepted by Sackett, in the following words: " Augustus Sackett, Esquire, you will please to pay over to Joseph Willard $3000, when you receive it from the proceeds of my estate devised to me by my late father Robert Lylburn, deceased, it being the value I place upon the said estate and all that I am to give the said Joseph Willard for six thousand acres of land purchased of him, lying in the counties of Greenbriar, Monro and Giles or Kenahwa, or in which county I may select the same, in the state of Virginia. And in case the said estate, upon final settlement, shall amount to any sum over the said $3000, you are to retain the same as a compensation for your trouble and expense you may be at in selling the said estate and negotiating the exchange of property between said Joseph Willard and myself. In witness whereof I have hereunto set my hand and seal the twentieth day of March, 1817.          *John Lylburn*. [L. S.]

"Signed, sealed and delivered in presence of Charles L. H. Shefflin, Elihu C. Sackett.

"Accepted 20th March, 1817, Augustus Sackett."

In January, 1818, Sackett having become insolvent, Willard filed his bill in this court to compel the payment of the $3000, or obtain a decree for the sale of the estate to discharge the same. And an injunction was granted restraining Sackett from making any disposition of the property, calculated to impair Willard's rights therein. In April of the same year a compromise was affected between Willard and Sackett; and a conveyance was made and executed between Sackett and his wife of the first part, Sylvanus Miller of the second part, and Willard of the third part; which recited that Sackett in part owned and held in trust one sixth part of the Lylburn estate, and that Willard claimed to have a lien on the estate; that Sackett was indebted to various persons named in a schedule annexed, and that he was desirous, with the approbation of Willard, to provide for the payment of those debts; and by which conveyance the parties of the first part, with the consent of Willard, conveyed to Mil-

ler the Lylburn estate in trust to sell and convert the same into money, and out of the proceeds thereof in the first place to pay to Willard the $3000 and interest; and in the second place to pay the residue to the creditors named in the schedule, rateably, upon condition they released their claims against Sackett by the 1st of May thereafter. And in case of the refusal of any of them to execute releases, their share of the residue was by the terms of the conveyance to be paid to Sackett or to his assigns. Clark, Hitchcock and Jacobs, three of the creditors named in the schedule, having neglected to comply with this condition, Sackett, on the 8th of May, 1818, conveyed to W. S. Hart all the interest which was intended for these creditors under the deed to Miller. Hart was afterwards discharged under the insolvent act; and in April, 1822, his assignees conveyed to Elihu White, the complainant, all the interest he had acquired in the property under the conveyance from Sackett. After the conveyance from Lylburn, and before the execution of the trust deed to Miller, Patrick Farrelly recovered a judgment against Sackett in the supreme court, which was docketed on the 25th of October, 1817. In May, 1822, White purchased this judgment for $328,72, the amount then due thereon. Sackett gave his note to White for the whole or a part of the amount due on the judgment, and the latter agreed if the note was paid that the judgment should not be enforced against the real estate of Sackett out of the city of New-York, but only against the property he (Sackett) conveyed to Miller in trust. Sackett at the same time gave to White a written stipulation that he might at any time cause an execution to be issued upon the judgment. An execution was afterwards issued upon this judgment to the sheriff of New York; and all the right of Sackett to the Lylburn estate in that city was, on the 12th of July, 1822, sold, and was purchased in by White for $25, to whom the sheriff gave a certificate of the sale. At the sale, the counsel for Willard attended and gave notice of his claim to the property. In November, 1818, Willard, Miller and others, claiming an interest in the estate of Robert Lylburn, together with the creditors named in the schedule to the trust deeds, filed a bill in this court against the executors of the will of

Robert Lylburn and others, for a division and partition of the estate, and for an account of the personal estate and of the rents and profits of the real estate ; and in June 1822, a decree was obtained in such suit for the sale of the real estate. After the sale by the sheriff on the judgment, the complainant filed his bill in this suit against the parties on the partition suit to obtain the one sixth part of the Lylburn property ; and in February, 1823, he entered into a stipulation with the parties in that suit, by which it was agreed he should join in the conveyances to the purchasers at the sale under the decree in partition, without prejudice to the rights of any of the parties ; and that he would pursue his remedy only against the proceeds on such sale. The property was sold in that suit, and a final decree was made therein, by which the rights of all the parties in the estate were disposed of, except as to the one sixth arising from the half of John Lylburn's share originally conveyed to Sackett. That amount was directed to be paid to the assistant register, to abide the further order of this court. Willard having died, the cause was continued against Carpenter and wife, his personal representatives. It was heard on the pleadings and proofs before the late Chancellor Jones; who in June, 1827, decided that White was entitled to the amount due on the Farrelly judgment at the time of the assignment thereof to him, with interest, to be paid out of the fund in court ; and he directed that a reference be had to one of the masters of this court if necessary ; to ascertain the amount due, and he refused to allow costs to either party as against the other.

The following is the opinion of the late chancellor on which the original decree in this cause was founded :

OPINION OF CHANCELLOR JONES. John Lylburn being entitled under the will of his father, Robert Lylburn, to one third part of the real and personal estate of Robert Lylburn, the testator, and having previously conveyed one half part thereof to one Benjamin Field, on the 19th March, 1817, for the consideration of $3000 as expressed in the deed of conveyance thereof, sold and conveyed all the residue of his interest in the estate of his said father, being the remaining half

of his original share, or the one sixth part of the said estate, to Augustus Sackett.

Augustus Sackett, on the first day of April, 1818, by indenture of that date, made between him the said Augustus Sackett and Minerva his wife, of the first part, Sylvanus Miller, of the city of New-York, of the second part, and the defendant Joseph Willard of the third part, after reciting in substance that he (Sackett) was entitled, as therein stated, to the said one sixth part of the said estate of Lylburn, estimated at the sum or value of $9,818 33, and was indebted to the persons named in the schedule to the indenture annexed, in consideration of the premises and of one dollar to the grantors in hand paid, granted and conveyed the said one sixth part of the said estate of Lylburn to Miller, in trust after converting the same into money and paying expenses, to pay first to the defendant Willard $3000 with interest from that date, and then to distribute and pay the residue to the several creditors named in the schedule, in rateable proportions, according to the amounts therein stated to be due to them respectively ; with a proviso or condition in the said indenture to the following effect ; that the said creditors should severally, on or before the first day of May then next, execute to Sackett absolute discharges of their respective demands against him, and should cancel of record any judgments which they might have against him ; and in default of performance of that condition, the rights of all the creditors so in default to be forfeited as to any benefit they might otherwise derive from the indenture, and the povision thereby made for them was immediately to cease, and revert to Sackett, the grantor.   None of the creditors complied with the condition ; consequently the interest set apart to them reverted to Sackett, and became, after the first day of May, 1818, subject to his disposal.

On the 8th May, 1818, Sackett conveyed to William S. Hart an interest under the deed of conveyance to Miller, particularly described in the deed to Hart as forfeited by the neglect of William Hitchcock, Joseph Jacobs and Thomas E. Clark, creditors of Sackett, to release and discharge him from their demands, and as being an interest of $4000 in the

estate of Robert Lylburn, deceased, or the interest in said es-
tate as $4000 bears to $9,818 33, the one sixth part of said
estate.

On the 6th November, 1821, Hart having become insol-
vent, did, under the act entitled "An act to abolish imprison-
ment for debt in certain cases," passed April 7th, 1819, and
in pursuance of an order of the recorder of the city of New-
York, make an assignment of all his estate to Luther Bing-
ham, Lewis E. Seger and Frederick A. Tallmadge, assignees
duly appointed for that purpose, in trust for the benefit of his
creditors.

On the 3d April, 1822, the said Luther Bingham, Lewis E.
Seger and Frederick A. Tallmadge, the said assignees, by in-
denture of that date, granted and conveyed to Elihu White,
the complainant, the aforesaid indenture executed by Sackett
to Hart, and all and singular the rights, claims, interests and
premises thereby granted, or intended so to be, or which it was
in the power of the said assignees to convey.

It further appears that one Patrick Farelly, on or about the
25th October, 1817, recovered a judgment against Sackett in
the supreme court of judicature of the state of New-York for
$2400 debt and $87,26 damages and costs, which was dock-
etted on that day; that an execution was issued on that judg-
ment directed to the sheriff of the city and county of New-York,
and all the right, title and interest of Sackett at the time of the
docketing of the said judgment, or at any time afterwards, in
certain parcels of real estate whereof Robert Lylburn, de-
ceased, died seised, situated in the city of New-York, and com-
prising the whole of the real estate of the said Robert Lylburn
at the time of his death in the said city, was sold by the said
sheriff, by virtue of the said execution, on the 13th July, 1822,
and purchased in by the complainant for his own benefit and
indemnity, he being at the time the proprietor of the said judg-
ment by a previous assignment thereof to him, and which judg-
ment is still unsatisfied.

Under the first of these titles, the complainant claims to be
entitled to the interest in the estate of Robert Lylburn, de-
ceased, specified in the deed of assignment and conveyance
from Sackett to Hart; and under the second title, to one

sixth part of all the estate of Lylburn, covered by the judgment at the time it was docketed, and which one sixth part of that estate was then vested in Sackett, and he demands an account from the executors of the will of Robert Lylburn, deceased, of the one sixth of what they have realized from their testator's estate, subject to a provision for the widow's annuity under the will; and that the one sixth of the proceeds of any sales to be made under the decree in the pleadings mentioned may be brought into court and invested, and he prays for an injunction to restrain the defendants from intermeddling with the said one sixth of the proceeds of the said sales, until the further order of the court, and for general relief.

The claim is resisted by the defendant, Joseph Willard, who defends the suit, and who insists on the right to have the sum of $3000, with interest, satisfied and paid to him by and out of the one sixth part or share of the estate of Robert Lylburn, deceased, assigned and conveyed by John Lylburn to Augustus Sackett, in priority and preference to the satisfaction of the claims of the complainant; and contends that the satisfaction of any demand the complainant may have upon that portion of the estate is to be postponed to the payment of his said claim of $3000 and interest.

The claim of the defendant Willard to the $3000 he demands, has its origin in the purchase by Sackett of the one half of the share or interest of John Lylburn in the estate of his father, Robert Lylburn, and which purchase he alleges was made by Sackett as his agent, and paid for in lands belonging to him in the state of Virginia; and he alleges and insists that by the terms of the arrangement under which that interest was conveyed by Lylburn to Sackett, and vested in Sackett, he (Willard) was to have $3000 out of it, and to become interested to that amount in the premises held by Sackett.

The substance of the statements of the answer on that point is, that the defendant Willard, in March, 1818, employed Sackett, who was a broker, to sell for him sundry tracts of land in the state of Virginia; and that on the 19th of that month, Sackett informed him that John Lylburn wished

to exchange his share in the deceased father's estate for lands, and would, for 6000 acres of the defendant's Virginia lands, convey his entire share of the said estate; and that by means of that estate, he (Sackett) could raise for Willard the sum of $3000; and that it was understood and agreed upon between him (Sackett) and Lylburn, that he (Sackett) should have whatever he could make of the said share of the said estate so to be conveyed to him beyond that amount; that Sackett promised to pay the defendant Willard the said sum of $3000 immediately after the deed of conveyance from Lylburn to him should be executed and recorded; that the money was to be raised on the credit and security of the said conveyance, or out of the property or interest to be granted thereby, and that the same was for that reason to be vested in Sackett; and that he, the defendant Willard, relying on the promises and assurances of Sackett, agreed to the arrangement, and that in consequence thereof the deed of Lylburn was executed to Sackett accordingly.

The defendant Willard further alleges and avers, that he never meant to rely on the personal responsibility of Sackett for the payment of the $3000, but that it was understood by Lylburn, Sackett and himself, that the property convey to Sackett was to be held by him in trust for the defendant Willard, for the purpose of raising the said $3000 for him by a sale or mortgage of the whole or part of the estate. He further states that he paid the whole consideration for the said property so conveyed to Sackett in Virginia lands, according to the terms of the arrangement with Lylburn, 540 acres of land in Munro county, in the state of Virginia, being conveyed by him to Lylburn on the 20th March, 1818, and a covenant or instrument given for the conveyance of the remaining 5360 acres, to be selected out of 200,000 acres owned by him in that state, within twelve months from that date, which instrument was assigned by Lylburn to Amos Cowley, and by him to David French, to whom he, the defendant Willard, on the 24th February, 1818, conveyed the lands therein mentioned.

1830.

White
v.
Carpenter.

In the instrument or covenant for the conveyance of the 5360 acres of the 6000 acres of land to Lylburn, which bears date and was executed on the 20th March, 1817, it was stated by way of recital that the defendant Willard was owner of 200,000 acres of land in the different counties in Virginia, and that John Lylburn had purchased of said lands 5360 acres to be selected within twelve month from the date of the said instrument; that John Lylburn on the 19th March, 1817, conveyed one moiety of the estate derived from his father to Sackett for the consideration of $3000, which was to be paid by Sackett to the defendant Willard as soon as the same was received from the said estate, as a full satisfaction for the lands so purchased by Lylburn of Willard.

On the same 20th March, 1817, an order or instrument in writing was executed and given by Lylburn under his hand and seal, directed to Sackett, thereby requiring him to pay over to Willard $3000 when he received it from the proceeds of the estate of Lylburn devised to him by his father, it being the value he placed upon the said estate, and all he was to give Willard for 6000 acres of land in the state of Virginia purchased of him; and further directing Sackett, that in case the whole estate vested in him (Sackett) upon final settlement, should amount to any sum over the $3000, he (Sackett) was to retain the same as a compensation for the trouble and expense he might be at in setting the said estate and negotiating the exchange of property between Willard and himself. On this order or instrument a written acceptance was endorsed and signed by Sackett, and the order with the acceptance thus endorsed thereon was delivered to Willard and accepted by him.

The defendant Willard states in his answer that when the arrangement was completed, he applied to Sackett for security for the $3000; that Sackett told him he could raise the money by a mortgage of the interest assigned to him, and would pay the amount as soon as it should be raised, and would pay $1500 the next day; and that he, the defendant, thereupon took the order and relied upon it and on the assurances of Sackett without security.

He further states that on the 10th January, 1818, appre-
hending that Sackett intended to defraud him of the amount
due to him out of the estate by making a conveyance there-
of, he, the defendant, filed a bill against him and obtained an
injunction to restrain him from making any disposition of the
property to his (Willard's) injury; and that on the 2d April
the suit was settled, Sackett having consented to secure the
defendant by the conveyance of the estate to Sylvanus Mil-
ler in trust for his benefit; and which conveyance was made
on the first of that month, and satisfied the defendant.

But the defendant contends, moreover, that the estate and
interest originally conveyed by Lylburn to Sackett, though
the deed was absolute in its terms, was vested in Sackett, and
held by him as a trustee, in trust for the defendant Willard,
to the extent of the said sum of $3000, which was to be rais-
ed for him thereby; and he insists that the complainant was
chargeable with notice of the trust, and bound by it. Sack-
ett has been examined as a witness, and denies the trust·
He testifies in clear and positive terms, that the deed was
executed to him for his own benefit; and that Willard had
no interest in the property. If full credit could be given to
this statement it would be conclusive; but the witness is in-
distinct in his recollections, and his answers on his cross-ex-
amination are unsatisfactory. I dare not trust implicitly to
his testimony; yet I am not to disregard his deposition, but
to view it in connection with the other proofs in the cause,
and look to the whole of the evidence taken together for the
character of the transaction.

The first branch of the complainant's title is his pur-
chase from the assignees of Hart. The defence taken
by the defendant against that claim is, that the trust deed
from Sackett to Miller under which the title of Hart
was derived, by the express terms of it, gives a prefer-
ence and priority to his claim, and necessarily postpones
that of the complainant. The conveyance of Sackett and
wife to Miller, is of all their right, title, interest claim
and demand in law and equity, of, in and to the estate real
and personal, whereof Robert Lylburn, deceased, died seis-
ed or possessed, and of, in and to the rents, income, interests

1830.

White
v.
Carpenter.

and profits of the same which had arisen or accrued since the decease of Lylburn, or might thereafter arise, or accrue from the same ; and the trusts of that deed are, that Miller, the trustee, after converting the trust estate into money, and defraying the charges of the trust, should pay the defendant Willard three thousand dollars with interest from the date of the deed in the first place, and then to pay the demands of the creditors named in a schedule annexed to the deed rateably, according to the amount of their demands. And if that conveyance was operative, and the trust for the benefit of Willard was effectual, I do not see how his interest in the estate can be defeated or impaired by any subsequent act of Sackett, or how the assignment afterwards made by Sackett to Hart, the benefit of which is now vested in the complainant, can supersede that prior conveyance to Miller, or entitle the complainant to any portion of the estate of Lylburn until the defendant Willard is first paid. Indeed Sackett obviously intended that the assignment to Hart should operate upon the surplus only of the estate after the trust in favor of Willard should be first satisfied ; for the deed recites the trusts vested in Miller, and purports to convey to Hart the shares and proportions of the trust property which the three creditors mentioned in it would have been entitled to receive if they had conformed to the provision of the trust deed and executed the release and discharge required by the proviso or condition it contained. Sackett could not consistently with his conveyance to Miller convey to Hart any further or greater interest than the surplus and residue of the trust premises after the payment of the $3000 and interest to Willard thereout. The question of notice of the trust vested in Miller for Willard could not arise, for the right and interest of Sackett in the estate to the extent of the appropriation in favor of Willard was vested in Miller, the trustee, before the conveyance to Hart, and the trust for the defendant Willard was declared and appeared on the face of the deed to Miller. Sackett therefore had no power to convey that interest to Hart and Hart could derive no title to it from him.

It might perhaps be questionable on the authority of some recent decisions whether the trust deed to Miller was not in

1830.

White
v.
Carpenter.

its inception, and at the time of the subsequent conveyance to Hart, fraudulent and void as against the creditors of Sackett by reason of the proviso or condition it contained requiring the creditors to execute to Miller, the trustee, a release and discharge of their demands against Sackett, the debtor, to entitle them to the benefit of the trust and provision in their favor ; and which provision, in case of their neglect or refusal to comply with the condition, was to enure to the benefit of Sackett. But that question was not raised ; and as the objection to the deed on that ground was open to creditors only, and the trusts were effectual between the parties themselves, the complainant in his character of purchaser under Sackett could not perhaps avail himself of that exception to its validity ; and if he as assignee of a judgment creditor had objected to that feature of the arrangement, it would have deserved to be well considered how far the principle is sound by which the whole deed is vitiated by one invalid trust, or whether, when the several trusts are distinct and separate from each other, and some of them are illegal, but others are meritorious and free from taint or pollution, the latter may not be upheld, while the former are suppressed ; and the conveyance of the estate to the trustee be held valid for the support of the meritorious and beneficial trusts in favor of the honest cestuis que trust, but inoperative and void as a provision for the illegal purposes and fraudulent views it attempts to subserve. 'My judgment must be borne down by the force and weight of authority before I can attach to statute provisions a harsher operation or more unbending severity than to common law principles ; or deny to legislative enactments the liberal, benign and equitable construction which will give to them the attributes of a nursing mother, equally with the rules and principles of the common law. 'But whatever might be the effect of the illegal provisions of the deed under other circumstances, the complainant in his character of purchaser, in which light we are now considering him, has not made a case by his bill and proofs in the cause entitling him to avoid it as inoperative and void; and has not put his objection to it upon that ground. He asks, under this branch of his title, the interest conveyed to

1830.

White
v.
Carpenter.

Hart by the assignment of Sackett to him. To that extent he is entitled; and as the deed which grants it expressly grants what was intended for the therein specified creditors, and which by their forfeiture of it reverted to Sackett; and as the trust deed to Miller which created that interest defined it to be a rateable dividend of the surplus and residue of the trust estate after the payment of $3000 and interest out of it to Willard in the first instance, the complainant can claim under his title derived from Hart's assignees no more than his $4000, after the prior appropriation of $3000 and interest to the defendant Willard shall be first fully satisfied.

But his claim under the title derived from the purchase made by him under the judgment against Sackett in favour of Farrelly, and from the assignment of that judgment to him, is alleged to be more comprehensive, and exposed to none of the objections which apply to his title as a purchaser under Hart's assignees. That judgment was docketed on the 25th October, 1817, which was nearly six months prior to the conveyance from Sackett to Miller. It consequently bound all the real estate of Sackett, and was a subsisting lien upon his share, or one sixth part of the lands and tenements formerly of Lylburn, if the same was vested absolutely in him in his own right, at the time of the conveyance of that interest by Sackett to Miller. That lien was afterwards enforced by an execution on the judgment, and a sale thereunder by the sheriff of the city and county of New-York, of all the right and interest of Sackett on the 25th October, 1817, when the judgment was docketed, or at any time afterwards, in the real estate of Robert Lylburn, deceased, at the time of his death, in the city of New-York. At this sale, the regularity of which is not impeached, the complainant White became the purchaser of the interest thus sold. He claims also to be the proprietor of the judgment by purchase, and a regular assignment of it to him prior to the sale; and if these titles are established by proof, they are prima facie sufficient, and will, unless repelled by other proofs, entitle him to a decree for the portion of the estate or of the proceeds of the estate in question, which they ostensibly cover, or, at least, to the amount due before the judgment.

But his proof of title to the judgment is said to be defective. No assignment of the judgment is produced, nor do I find any proof of the loss of it or of a search for it. But the defendant, in his answer, states, that the complainant, as he the defendant has been informed by the attorney of Farrelly, and verily believes, purchased the judgment on or about the 27th day of April, 1822, and took an assignment thereof, drawn by said attorney, for the consideration of $200, besides the costs of suit. This statement would seem to be a sufficient admission of the ownership of the judgment, if the complainant had not gone into proof of it; but he has made it the subject of proof. David Codwise, the attorney for Farrelly, the judgment creditor, has been produced as a witness to prove the assignment of the judgment by Farrelly to the complainant. He testifies that an assignment of it was executed by Farrelly to the complainant, in his presence, in the month of April, 1822, and prior to the 27th, and, as he thinks, about the 16th day of that month; that the consideration for the assignment was $200, the balance remaining due of the debt, and $128,72, also remaining due thereon for costs and fees, amounting in all to $328,72, which was paid to him, the witness, by the complainant at the time of the delivery of the deed of assignment to him, and was remitted by him the witness to Farrelly the judgment creditor, or accounted for to him; and that the said sum of $328,72 was due upon the judgment at the time of the assignment of it to the complainant.

The fact of the assignment is further confirmed by the written consent of Sackett the debtor to the assignee to issue execution upon it, which is in proof in the cause. This consent bears date the 3d May, 1822, and purports that the judgment having been assigned, he (Sackett) thereby consents that execution thereon issue at the discretion of the assignee without the expense of formal proceedings to revive the same. This evidence leaves no doubt of the fact of the assignment of the judgment to the complainant, but it shews that the assignment was by deed, and that deed not being produced, nor any proof of the loss of it given, or that any search has been made for it, the parol testimony adduced to prove it might not of itself, if it stood alone, and the objection

to it had been properly taken, be competent or sufficient to shew the existence and contents of the assignment.

But the introduction of that evidence does not disprove the fact of the assignment, nor disclose any circumstance to raise a suspicion against either the fairness of the transaction or the sufficiency of the assignment to pass the interest in the judgment; and I do not see, therefore, why it does not leave the force and effect of the admission of the defendant in his answer unimpared; and if so, that admission supplies the deficiency of other proof. It would follow, then, that the complainant is to be regarded as the owner of the judgment. But it is further contended that whether the complainant was the owner of the judgment or not, the purchase by him of the estate and interest sold by the sheriff by virtue of the execution issued upon it, is equally available to him.

The fact of the sale is established by the certificates of the sheriff, which shew that all the right, title and interest of Sackett in the real estate therein specified, and which appears to be all the real estate in the city of New-York whereof Robert Lylburn, deceased, is mentioned in the pleadings to have died seised, was sold by the sheriff by virtue of the said execution on the 12th July, 1822, to the complainant, and that he was entitled to deeds for the same. This sale by the sheriff, under the execution upon the Farrelly judgment, and the purchase by the complainant under it, are admitted by the answer.

The objections therefore taken by the defendant on the argument to the sufficiency of the complainant's proof of the assignment of the judgment to him, and to the evidence of title to a deed by the sheriff's sale, cannot in my judgment prevail.

But it is contended on the merits of the defence that the judgment never was a lien on the real estate conveyed by Lylburn to Sackett, and if that position can be sustained, the title set up by the complainant under that judgment must fail.

In support of this defence, the defendant alleges that the estate conveyed to Sackett was acquired by him as the agent of the defendant in exchange for lands in the state of Vir-

1830.

White
v.
Carpenter.

ginia belonging to him the defendant, and agreed to be exchanged by him with Lylburn for the moiety of his share and interest of and in his deceased father's estate ; and that the conveyance of the interest agreed to be taken of Lylburn in exchange for the lands of the defendant agreed to be conveyed to him therefor, was made to Sackett solely for the purpose of enabling him, as the agent of the defendant, to raise the sum of $3000 by the sale or mortgage thereof for the use of the defendant, and vested the title in him as trustee for Willard, and not in his own right. The defendant further insists upon an interest in the premises as having resulted in his favor by implication of law from the payment of the consideration of the purchase. He avers that Sackett never gave any consideration for the conveyance of the estate and interest to him, and that Lylburn never received any other consideration therefor than the lands conveyed and contracted to be conveyed to him by the defendant ; and he insists that by reason of such payment of the consideration by him, the estate conveyed by Lylburn to Sackett was taken and held by Sackett in trust for him and for the payment to him of the said $3000.

The deed from Lylburn to Sackett was an absolute conveyance of the estate to him in fee in the usual form. There was no trust expressed, and there was no evidence or indication of a trust upon the face of the conveyance.

But it is contended that the papers executed by the parties to the transaction on the 20th March, the next day after the date of the deed, shew the nature of the transaction and establish the trust. The written documents consist of, first, the covenant of the defendant Willard for the conveyance of the 5360 acres of Virginia land to Lylburn, in completion of the arrangement between them for the exchange of Virginia land for the moiety of the younger Lylburn's share and interest in the elder Lylburn's estate ; and secondly, of the order of Lylburn upon Sackett for the $3000 in favor of the defendant Willard, and Sackett's acceptance of that order. These written evidences, and particularly the order of Lylburn upon Sackett in favor of the defendant Willard for the $3000, to which the defendant Willard made himself

privy if not a party by his acceptance of the order, shew that the consideration Lylburn was to give for the 6000 acres of Virginia land was the sum of $3000, and that the value set by Lylburn upon the moiety of his share and interest of and in, the estate of his father, after deducting the disbursements and charges of Sackett in settling the estate and effecting an exchange of that interest in the Virginia land, was $3000 ; and that the same was conveyed by him to Sackett upon the agreement of Sackett to pay to Willard the $3000 he was to receive for the 6000 acres of land he was to convey to Lylburn.; and that Sackett was to retain and consented to accept and take the excess and surplus of the estate and interest so conveyed to him, if upon the final settlement of the estate there should be any surplus thereof over the $3000, for his trouble and expense in settling the estate and negotiating for Lylburn the sale of his remaining interest in his father's estate for the Virginia lands of Willard. The estate and interest then was, by the concurrent agreement of all parties to the arrangement, to be vested in Sackett absolutely, and he was to assume and pay to Willard the $3000 payable to him ; and for raising that sum, the property vested in Sackett was contemplated as a resource to him. A charge upon the estate would have been the best security to Willard for the faithful application of the proceeds of it by Sackett ; and Willard shews by his own statements that he was fully sensible at the time of the importance of that species of security to him, but his fears of jeopardizing the success of Sackett's operations for raising the money upon the estate seems to have deterred him from the precautionary measure of charging it with a trust or lien for his own safety. Sackett professed an entire confidence in his ability to raise the money if the estate was vested absolutely in him ; and Willard, trusting to these professions and impatient to realize the money his occasions required, yielded to the suggestion of Sackett ; and for the purpose of facilitating his operation, was induced to repose himself upon the integrity of Sackett, and to entrust him with the ownership and unrestricted disposal of the estate. It would have been incompatible with this plan of operation to encumber the property with a trust ;

and, besides, as the money was to be raised immediately, and the whole operation was expected to be completed within a very short period of time, it was the less necessary to take any precaution to guard the power entrusted to Sackett from abuse. These probably were the causes of the confidence reposed by Willard in Sackett. It was natural and almost a thing of necessity that Willard should, under such circumstances, relax his vigilance and dispense with the lien which an express trust would give him upon the property, and allow it to be vested in Sackett as the absolute owner in order to facilitate the sale or pledge of it by him to raise the money; and this course of proceeding was the more proper, as Sackett had an interest in the estate conveyed to him, and was to retain the surplus, after providing for and paying the $3000, to his own use. It was in conformity to these views that the conveyance to Sackett was absolute, and that the order of Lylburn on him and his acceptance of that order for $3000 was given to Willard and taken by him in lieu of a trust or security upon the property itself. These were Willard's own views of the subject; for he admits in his answer that his first impression was that the property to be obtained from Lylburn should be conveyed to himself and not to Sackett; but that upon the representations of Sackett, and his promise and assurance that the money could and should be immediately raised by him upon or out of the property if vested in him, and should be paid by him to the defendant Willard, he (Willard) relying upon those promises and assurances of Sackett, consented to the conveyance of the premises to Sackett. He further states that his impression was that he ought to have some security for the $3000 when he executed the conveyance or covenant to convey his land to Lylburn, and that he mentioned that impression to Sackett, but that Sackett replied that it was not worth while to multiply papers; that he (Sackett) had the promise of the $3000 on a mortgage of the property, and the same should be immediately paid to the defendant Willard, and that he should in any event receive $1500 the next day or the day after; and that in consequence of those assurances, and relying upon them, he (Willard) received

the order and acceptance from Lylburn and Sackett. Thus, we have his own acknowledgment that he forbore the further pressure of his claim to the security, and rested upon the faith of Sackett's engagements. He avers, indeed, that he had no intention of trusting to the personal responsibility of Sackett; and in support of that allegation, it is urged that the arrangement between the parties, and the engagement of Sackett, appears upon the face of the order to refer to the one sixth of the Lylburn estate vested in Sackett by the deed from Lylburn as the source or means by which the order was to be met. But the answer is, that no trust, lien or security upon the estate was created for the defendant. The property was conveyed to Sackett absolutely, and vested in him in his own right; and his acceptance was taken to bind him to apply the $3000 of the proceeds of the premises when sold or mortgaged, to the payment of the order in favor of Willard. The security of Willard that the means thus furnished to Sackett would be applied to the raising and paying to him the $3000 according to the terms of the order were, the promises and assurances of Sackett, the confidence reposed in his integrity by Willard, and the powerful motives he must under such circumstances, have been supposed to have to be faithful to his engagements.

The result of the whole of the evidence would seem to be, that the consideration Willard was to receive for the 6000 acres he agreed to convey to Lylburn was the sum of $3000 in money, and not the moiety of Lylburn's share of his father's estate, which was valued by him at $3000 to Sackett, who, in consideration thereof, was to pay the $3000 when received out of the property to Willard, and to have the surplus value of the property conveyed to him for his own compensation. Sackett did not, by this arrangement, become the trustee of the property for Willard; his engagement was not to hold it in trust, but to take it in his own right absolutely, and to raise out of it or upon it the sum of $3000, and pay the same over to Willard. The power of Sackett to dispose of the property as the absolute owner of it was unrestricted; and a personal confidence was placed in his fidelity in applying the proceeds according to his engagement. The only feature of the

arrangement which wears the semblance of a trust is the reference to the property as the means of raising the $3000 to be paid by Sackett to Willard. This circumstance might raise an equity as between Sackett and Willard, in favor of Willard, if no intervening lien would be disturbed, nor any interest of any third party affected by the omission to have the estate sold for the purpose of raising the money, in case the payment of it should be unreasonably delayed by Sackett ; but it is not sufficient to impress the character of a trust upon the property    The obligation of Sackett to raise and pay the $3000 to Willard was a personal engagement; the property conveyed to him by Lylburn was the means by which he was expected to raise it.    But the money was not charged, upon the estate, nor was there any trust created by the deed to Sackett, or declared by the order and acceptance to which he was a party, whereby the property could be affected.    He was the absolute owner of the estate ; he had the unqualified right to sell it, and a purchaser would not, I apprehend, be bound to see to the application of the purchase money.

. The order and acceptance for the payment of the $3000, and the covenant of Willard, both of which were executed on the 20th March, are the only instruments of writing in which the trust could have been expressed, and I am satisfied that neither of those documents contained any binding or effectual declaration or expression of any such trust ; and if the defendant is correct in the representation he makes in his answer, that it was understood by Lylburn, Sackett, and himself that the property conveyed to Sackett was to be held by him (Sackett) in trust for him (Willard) for the purpose of paying him by a sale or mortgage of the whole or part thereof, the said $3000, the alleged trust was by parol and never reduced to writing or expressed or declared in the form required by law to make it a valid or effectual trust to bind the grantee or to charge or affect the estate.

But it is contended that the payment by Willard of the consideration for the purchase of the estate conveyed to Sackett created a resulting trust of the estate to him.

The rule that a trust will result to him who pays the consideration for the estate, where the title is taken in the name of another, is well established ; and the reason of it is too obvious to need illustration. It is equally true, that the statute of frauds does not affect such a trust, for it arises by operation of law, and is expressly excepted by the statute from its operation ; and it is equally clear that parol evidence is admissible to establish such a trust by shewing the fact of the payment of the consideration money by the cestui que trust. *Jackson* v. *Steenberg*, 1 John. Ca. 153. *Foote* v. *Colvin*, 3 John. R. 216. *Willis* v. *Willis*, 2 Atk. R. 71. *Botsford* v. *Brown*, 2 John. C. R. 405.)

The question is whether the facts in this case sufficiently shew a resulting trust in these premises in favor of Willard.

A resulting trust arises by implication of law, and the operation of it is to vest the estate itself in the party to whom the trust results. The principle is, that the estate belongs to the party who advances the money out of his own funds and on his own account to pay for it ; and the nominal grantee, who receives the title without paying or incurring any liability to pay any part of the consideration money, is looked upon and in truth is the mere conduit pipe or channel through which the estate and the title and interest in it pass from the grantor to the real purchaser who pays the consideration for it. It follows, as a necessary consequence, that the trust must arise, if at all, at the time of the conveyance, and that the money or other consideration for the deed, which is the foundation of the trust, must be then paid or secured to be paid. So far has this principle been carried, that courts of law have held that such interests are saleable by execution against the cestui que trust, and that the right of possession and legal estate may be recovered in an action of ejectment or writ of right against the trustee, on the ground that the trust is executed by the statute of uses, and the estate itself vested in the cestui que trust.

The trust, then, which results to the purchaser by operation of law must be a pure, unmixed trust of the ownership and title of the land or estate itself, and not an interest in the proceeds of the land, nor a lien upon it as a security for an ad-

vance or other demand, nor an equity or right to a sum of money to be raised out of the land or upon the security of it. These rights are the subjects of the contracts or agreements of parties, and may form the substance of 'express trusts; but they require for their subsistence that the title and legal estate of the premises which yield the aliment that sustains them, should reside, not nominally, but potentially in the trustee. They are not fit objects therefore for implied trusts; they are too complex and partake too much of the nature of contracts to belong to the class of pure and simple trusts, the sole operation of which is to vest the estate in the actual purchaser in exclusion of the nominal grantee, and not to regulate the equitable rights and interests of those for whose benefit the legal owner may be under a moral obligation to hold or apply it.

In the case now under consideration the defendant Willard does not claim to have been originally entitled to the estate conveyed to Sackett, but to the sum of $3000, to be raised by Sackett out of that estate or upon the credit and security of it. This equity as claimed by him, is, by his own shewing, to have that sum of money raised by the sale or mortgage of the property, or a competent portion of it, and the trust, if any, must attach to Sackett, and bind him and the estate thus vested in him, to hold and apply that estate for the security and payment of that sum to Willard as cer-tui que trust in the premises, and not to bind him to convey the estate itself to Willard, or to hold for him and subject to his disposition and control. This avowal by the defendant of the nature of the interest he claims in the property is decisive against the trust supposed to result from the payment of the consideration for the purchase of the estate.

It was also contended that there was no resulting trust, because Willard did not acquire by the arrangement a right to the whole estate conveyed to Sackett, but an interest to the amount of $3000 only, and that the residue was the absolute property of Sackett the grantee; and the rule was contended to be that a trust could not arise by implication in a portion only of the estate from the payment of part of the purchase money. To this it was answered, that a different

rule prevailed in *Wray* v. *Steele*, where a trust of the one third part of the premises was held to result to the party who had advanced one third part of the purchase money. The principle of that case remains unshaken in England, and the same principle has been acted upon in our own courts. But though there may be a trust of a part only of the estate by implication of law, it must be of an aliquot part of the whole interest in the property. The cestuis que trust to whom the trust results must become, by the operation of law upon the estate, a tenant in common with the grantee of the whole interest vested in him by the grant. There can be no resulting trust of the whole estate to a given extent of the value of it, leaving the residuum, if any, of the value to the grantee ; nor can an estate result to the party who pays the consideration as a pledge or security for the money so paid, and on the re-payment to return to and vest in the nominal grantee. Those interests may be created or protected and secured by mortgage of the estate by express trust or by liens upon it. But when an estate results by implication of law, the title and legal estate of the whole, or of some aliquot part of the whole, must vest in the party to whom it results, and in that sense the cases are to understood which decide that there can be no resulting trust in favor of one who pays a part only of the consideration money. This was the point of the decision of Lord Hardwicke in the case of *Cross* v. *Norton*, (2 Atk. 74.) In that case the elder Norton, the lessee, who was the last life of a lease, agreed to surrender it on the engagement of the lessor to grant a new lease for three lives, namely, the life of old Norton, of Col. Norton, and of an infant son of Col. Norton, for the consideration or price of $1500. Col. Norton paid the whole consideration, but the legal estate in the new lease was granted to old Norton and his heirs for the lives of himself and of Col. Norton and of his son ; old Norton, the day after the new lease was given, executed a declaration of the trusts of the lease in favor of Col. Norton and his son after his decease ; Col. Norton, after the death of old Norton, supposing the estate to be his, contracted to sell the same to Cross ; and the question was, whether the leasehold estate belonged to old

Norton in whom the legal estate was vested, or resulted by implication of law to Col. Norton, who paid the price for the renewal. Lord Chancellor Hardwicke observed that old Norton had the sole interest in the estate for his life, and the right of renewal which was a valuable interest, and formed part of the consideration of the new lease; that the whole value of the purchase was not paid by Col. Norton, and that therefore there was no resulting trust for him; and upon those grounds he held, that he must determine upon the express declaration of trust by old Norton who had the legal estate and valuable share in the new lease at the time it was purchased, and consequently the only person who had the right to declare the trust, and that there could be no pretence for an implied trust, by operation of law.

The grounds of the decision of Lord Hardwicke shew that Lord Eldon was right in saying that this case was misconceived when it was cited as an authority for the rule that a trust could not result from the payment of part of the purchase money. The principle is, that the whole consideration for the whole estate, or for the moiety or third. or some other definite part of the whole, must be paid to be the foundation of a resulting trust; and that the contribution or payment of a sum of money generally for the estate, when such payment does not constitute the whole consideration, does not raise a trust by operation of law for him who pays it; and the reason of the distinction obviously is, that neither the entire interest in the whole estate, nor in any given part of it, could result from such a payment to the party who makes it without injustice to the grantee by whom the residue of the consideration is contributed.

Why does not this principle govern the case before me? The $3000 was not the whole consideration for the purchase of the estate conveyed to Sackett. It was the consideration agreed to be given for the 6000 acres of land purchased by Lylburn of Willard, and it was the value set by Lylburn on the estate conveyed to Sackett for enabling him to raise the sum to be paid to Willard over and above his expenses and compensation for affecting the exchange and raising the mon-

ey.  The compensation to Sackett made part of the consid-eration for the estate conveyed to him; and when we see that estate valued by the parties in the schedule annexed to the deed to Miller at upwards of $9000, we must intend that Sackett had a valuable share in it at the time it was purchas-ed; and the legal estate being in him, and the payment to Willard of $3000 of the purchase money not constituting the whole consideration for the purchase, and not being paid as the consideration for any aliquot part of it, and no rule being given by which any share of the estate could be de-signated as accruing to him from that payment, there could be no ground for any implied trust to him by operation of law.

But it is contended that the order upon Sackett and his acceptance of it, supposing them not to amount to a decla-ration of trust, nevertheless created an equity in favor of Wil-lard, which gave him a lien upon the proceeds of the estate to the amount of the $3000 he was to receive, and bound the land to him to the amount for his security.

The order was upon Sackett: but the avails of the prop-erty vested in him by the conveyance from Lylburn was the fund out of which the money was to be paid, and the pay-ment was by the terms of the order deferred until the sale or other disposition of the estate.  The claim of Willard by vir-tue of the order was upon the fund or proceeds of the estate, and not upon the estate itself; and the obligation of Sackett was to apply the avails of the property when received by him to the satisfaction of the order he accepted.  No time was limited for the pledge or sale of the estate to raise the money; and if the sum drawn for had been paid or secured to Wil-lard, all obligation to sell would have ceased.  The accept-ance was a personal engagement of Sackett to pay the $3000 to Willard when that sum should be received by him from the avails of the property, and whenever the property should be disposed of he would be liable to Willard for the avails to that amount; and if he suffered the estate to be sold to sat-isfy his own debts, or sold it at an under value, he would have been himself answerable for the true value to the amount of the order; and any causeless and unreasonable delay in

the sale or disposition of the premises might perhaps have produced the same effect as to his liability ; but the order and acceptance created no direct charge or lien upon the property, and clothed it with no trust for the payment of the money which the acceptance bound Sackett to pay to Willard.

It was strongly pressed upon me that the order was exclusively upon the proceeds of the estate vested in Sackett, and that the estate was conveyed to him as a provision to enable him to meet the payment, and that his acceptance was intended to bind the fund only, and did not bind him personally beyond the amount he should receive from the property ; and on that ground it was contended that Willard had an equitable claim upon the estate out of which the fund was to be raised for his benefit, which entitled him to cause it to be appropriated to that object. But it may well be doubted whether the order was upon the fund solely, or was not upon Sackett personally, qualified with the condition that the amount drawn for should not become payable or be demanded of him until the sale or mortgage of the estate should be effected by him, to enable him to meet the demand. The documents, taken in connection with the pleadings and proofs, manifestly shew that the purchases and sales were negotiated by Sackett, who acted for both parties and ultimately became himself the purchaser under the arrangement finally agreed upon. It appears that Willard wished to raise $3000, and was willing to sell and offered for sale 6000 acres of Virginia land for that purpose ; and that Lylburn had authorized Sackett to sell his remaining interest in his father's estate, being one undivided sixth part of that estate, for the same sum ; that Lylburn was willing to take the Virginia lands offered by Willard for sale in payment for the interest in his father's estate, which he wished to dispose of, but was unable to pay money for the land ; and that the exigences of Willard requiring money, and not permitting him to accept an undivided interest in an unsettled estate in payment for his land, Sackett, who estimated the interest of Lylburn in his father's estate at a much higher value than the $3000 Lylburn was willing to take for it, proposed and agreed to

become himself the purchaser of it, and to assume and pay the $3000 which Willard was to receive for the lands to be conveyed by him to Lylburn ; and this arrangement meeting the views of all the parties, the deed to Sackett was executed by Lylburn, and the order of Lylburn upon Sackett for the $3000 in favor of Willard was accepted by Sackett to carry the same into effect.

In conformity with that arrangement, Lylburn, by his order on Sackett, directed him to pay over the $3000 to Willard out of the estate conveyed to him, and conceded that if the estate should produce more than the $3000, Sackett was to retain the same as a compensation for his trouble and expense in settling the estate and negotiating the exchange ; and in the same spirit the covenant of Willard with Lylburn of the same date refers to the purchase by Lylburn of Willard of the preceding day, and the conveyance by Lylburn of his one sixth part of his father's estate to Sackett for the consideration of $3000, and declares that the said $3000 was to be paid by Sackett to him (Willard) as soon as the same might be received from the estate so conveyed to Sackett, as a full consideration for the land purchased of him (Willard) by Lylburn as before stated. Did not these parties then assume the value of the moiety of Lylburn's interest in his father's estate to be at least $3000 ? and was not that sum fixed and agreed upon as the minimum value of that interest to the purchaser, and as the basis of the exchange ? and did not Sackett, by accepting the order with full knowledge of all the facts, assent to that valuation as the price he was to pay for the property at all events, and take the estate conveyed to him on those terms ? If that is the just construction of the order, taken in connection with the arrangement as it appears in evidence Sackett must be held to have assumed and agreed to pay the $3000 for the estate to Willard at all events ; and the reference to the avails of the property conveyed to him as the means or fund for payment was for his accommodation solely, to enable him to avail himself of that resource to fulfil his engagement, and deferring the fulfilment of that engagement until those means could be made available. In that view of the transaction, the only equity

Willard could have in reference to the estate conveyed to Sackett, would result from his interest in expediting a sale or disposition of the estate which was to entitle him to the payment of the order in his favor.    But suppose the order should be held to apply solely to the fund, and not to bind Sackett personally beyond the amount he should receive from the property ; how could the acceptance of the order create a charge or lien on the estate vested in Sackett ?

The cases cited on this point by the counsel establish the position that an order or bill drawn upon a particular fund under such circumstances, and for which the party drawn upon is not personally liable beyond the avails of the fund, amounts to an appropriation or assignment of so much of that fund in favor of the drawee which will prevail against the general assignees ; and on that principle it has been held that an order upon the purchaser of real estate by the vendor for the payment of a given sum out of the purchase money has been held to amount to the transfer of so much of the purchase money to the party in whose favor the order is given.    ( 1 Ves. jun. 282. )    But none of the cases countenance the opinion that such an order will be a charge or lien upon the estate conveyed to the purchaser, or entitle the holder to claim satisfaction out of the land.    It is the debt contracted by the purchaser for the purchase of the land upon which the order operates, and the appropriation or assignment it effects is of so much of that debt for the purchase money in the hands of the purchaser, and not of an interest in the estate he purchased.    On that principle, this order was an assignment or appropriation to Willard of $3000 of the purchase money for the interest conveyed by Lylburn to Sackett ; and the rights of Willard under that assignment would prevail against the claim of the general assignees of Sackett, under the laws relative to bankrupts or insolvent debtors.    But could such an order, in its operation as an assignment of the purchase money, charge the land or create a lien upon the estate vested in the purchaser ? I can discover no principle of equity upon which such a charge or lien can be supported.    It may be said that equity gives to the vendor a lien upon the estate he sells for the unpaid pur-

chase money, and that the lien is not extinguished or discharged by superadding to it the personal obligation of the vendee. Whether those doctrines of the English courts of equity obtain with us and if so to what extent, seems an unsettled question. But without investigating that point, and taking it for granted that the rule of this court is the same as that of the English court of chancery, that equity cannot be invoked into this cause, for the rule does not apply to cases where collateral security is taken or the mode of payment is regulated by a special agreement, and it may be at least questionable how far the lien is transferable to the assignee of the purchase money. How then can the rule be applicable to this case? Must not the arrangement for the payment of the purchase money by Sackett, and the order upon him in favor of Willard for the $3000 and his acceptance of that order, supersede the equitable lien, which the law, in the absence of the special agreement of the parties, might raise in favor of the vendor?

Lylburn, the vendor, has, by his order upon Sackett the purchaser, assigned $3000 of the purchase money to Willard, and Sackett is bound by his acceptance of the order to pay over that amount to him. Lylburn, therefore, who has parted with his title to the purchase money, can have no lien for it upon the estate ; and Willard who has taken the order upon Sackett and Sackett's acceptance of that order for the amount he is to receive without requiring any express collateral security upon the estate for the payment of it, must take his remedy, if put to a remedy, for the recovery of his demand upon that order and acceptance, and unless the terms or legal effect of that title authorize or entitle him to a recourse to the estate conveyed by Lylburn to Sackett, he can have none. The equitable rights conferred upon him by that order and acceptance, clearly entitled him to the aid of the court for holding Sackett to the spirit of his obligation, and for enforcing the full performance of his engagement. He might be compelled to pay the amount of the order he had accepted after the lapse of a reasonable time had been allowed him to convert the estate into money, or to raise the necessary funds upon it by mortgage ; and possibly, as be-

tween him and Willard, the immediate parties to the order, the court, while the estate remained in his hands unsold and free from incumbrances, might decree him to satisfy the order, or to bring the estate to sale for the purpose of raising the money for the payment of his acceptance. But I do not apprehend that equity could carry the relief of the holder of the order and acceptance so far as to supersede or impair the interest of a purchaser or the lien of a judgment creditor in his favor; but that if a sale of the estate had been decreed to be made by Sackett for the satisfaction of the order, such sale must have been subject to the liens upon the estate created by prior judgments against Sackett, and the purchasers must have taken subject to those judgments.

The judgment of Farrelly was obtained in October, 1817, prior to the deed to Miller, and before the filing of the bill of Willard against Sackett for the payment of the order, or the sale of the estate for its satisfaction. The complainant purchased that judgment in April, 1822, and became the purchaser of the interest which Sackett had in the property, when the judgment was docketed, at the sheriff's sale under the execution upon that judgment in the month of July in that year; and if my conclusions are correct, that the estate was bound by no trust for Willard, and that he acquired no lien or specific charge upon it, either by contract or by implication of law, from the payment of the consideration in Virginia lands, but that his equitable rights under the order and acceptance, and the arrangements from which they emanated were such as I have before defined them to be, the result necessarily is, that the judgment of Farrelly which proceeded the deed to Miller was a charge upon the estate at the time of that conveyance, and that the complainant, as the assignee of that judgment and a purchaser under it, is entitled to the benefit of the lien it created; and the defendant must be postponed to him or take subject to the charge of his incumbrance.

It was urged against the claims of the complainant that he had notice at the time of his purchase of the judgment, and of the property sold by execution under it, or was at those times chargeable with notice of the rights of Willard in the

premises, and must be held to have taken the interest he purchased subject to those rights.

If the views I have taken of the complainant's rights are correct, the question of notice is of no importance, unless the purchases of the complainant were fraudulent or collusive; and as the transactions are free from fraud or collusion I might pass by that branch of the defence. But as the point was made and discussed at large by counsel, and as some of the considerations connected with it have important bearings upon the merits of the controversy, a brief review of that branch of the defence may be useful, as it will serve to illustrate and fortify the opinions already expressed upon the other points of the case.

Then, had the complainant notice of the rights and equity which the defendant now sets up and claims to have had in the premises? The deed from Lylburn to Sackett gave no intimation of any such equity, and it must be conceded that he could have had no notice, actual or constructive, of any such equitable right, or of the order and acceptance of the 20th March, 1817, from which those rights are supposed to result, unless he is chargeable with the knowledge of the contents of the deed from Sackett to Miller, or the allegations and charges in the bill filed by Willard against Sackett, or in that filed by Brewerton, Willard and others against Ann Lylburn and others, and unless those matters are held to amount to notice, or to be sufficient to put the complainant upon inquiry on the subject.

The deed from Sackett to Miller must have been known to the complainant, and he must be charged with knowledge of its contents; for the deed from the assignees of Hart to him recited that prior conveyance from Sackett to Miller, and refers to it as a link in the chain of title. He, therefore knew of its existence and must have informed himself of its contents, or was bound to do so. But that deed did not recite or refer to the order and acceptance, nor acknowledge any subsisting trust or lien upon the property for the satisfaction of the defendant's demand. Its recitals are, that Sackett was the owner in part, and held in trust in fee simple the

1830.

White
v.
Carpenter.

one sixth part of the estate real and personal of Robert Lylburn, deceased, and which one sixth part of said estate was estimated at $9818,33; that Willard claimed to have a lien on said estate, and that he (Sackett) being indebted to the persons mentioned in the schedule annexed to the deed, was desirous, with the approbation and consent of Willard thereby testified, in order to provide for the payment and discharge of of the said debts and claims as mentioned in the schedule, to convey the same to Miller; and after these recitals, he grants and conveys the same to Miller upon the trusts mentioned in the deed.

Are these recitals notice of the rights the defendant claims to have had in the premises? The question of the sufficiency of notice is often embarrassing, and sometimes difficult of solution. But as a general rule to charge a purchaser, the notice must be such as explains itself by its own terms, or refers to some deed or circumstance which explains it or leads to its explanation. The recitals in this deed contain no express notice of any trust or equity in favor of Willard, nor do they refer to any transaction or matter from which any such trust or equity could be inferred. Nothing appears upon the face of the deed, or upon the conveyance from Lylburn under which Sackett held, to shew any connection of Willard with the estate, or any ground upon which he could clai n any interest in it, or lien upon it. So far from any recognition or admission of any trust of the estate, or equity affecting it for his benefit, his pretensions are expressly put, not upon an acknowledged right, but upon a claim made by him to a lien upon the property; and the fair import of the whole deed, taking the recitals and trusts in connection with each other, is, that the provision made for him by the trust of that conveyance was the only effectual security he had upon the property for his demand, and was intended to give him the lien which he claimed to have, but which had not before been admitted; for if he already possessed an undisputed lien on the estate, the trust created for him by the deed would have been unnecessary, and his interest would have been better subserved by the recognition and confirmation of that prior

lien, and which his counsel in such case would have insisted upon, instead of accepting an original trust, and thereby impliedly confessing that his previous claim to a lien was untenable, or that the benefit of it was waived and merged in the new security. The fair intendment from the terms of this deed is, that it was (and the complainant, if he perused it, had a right to presume that it was) the origin and source of the defendant's legitimate lien upon, and interest in the premises; and if that deed was the foundation of the defendant's title, his right was subject to the prior judgment against Sackett the grantor.

But it is contended that the bill filed by Willard against Sackett, and that filed by Brewerton and others against Ann Lylburn and others, were notice to the complainant of the defendant's rights. The bill of Willard against Sackett was filed in January, 1818. It was never answered by Sackett, but the suit was settled in April of the same year; the object of it being supposed to be accomplished by the trust created and vested in Miller for the benefit of Willard. That bill gave a succinct history of the transaction between Lylburn, Sackett and Willard, and put the claim of Willard, not on the ground of a resulting trust, nor on that of an express trust of the estate, but on the ground of an equitable lien or right, founded on the order and acceptance to have the money raised by means of the property; and the prayer of it is that Sackett pay the money or that the estate be sold to raise it. But how could the complainant in this suit be chargeable with notice of the contents of that bill? The suit was settled and terminated long before his purchase of the interest of the assignees of Hart or of the judgment of Farrelly. The bill of Willard against Sackett was not at that time a lis pendens in any just sense of that term. No reference nor allusion is made to it in the deed from Sacket to Miller, and no notice to this complainant, actual or constructive, is shewn of that bill or its contents. He was neither a party nor privy to the suit, and was as much chargeable with knowledge of the contents of every bill on file as that. His rights cannot be affected by any notice of the trust or equity of Willard which that bill may contain. But the suit between Brewerton and others

and Ann Lylburn and others was pending and in active prosecution at the time of the purchases of the complainant, and it appears that he had notice of that suit, and applied to be made a party to it.

The prayer of the bill in that case was for an account of the personal estate and of the rents and profits of the real estate, and for a partition of the real estate of the elder Lylburn, and that one moiety of the share of John Lylburn in that real estate might be set off and conveyed to Miller, to be disposed of by him according to the true intent and meaning of the deed of trust to him from Sackett. The bill was filed by Brewerton and others, claiming to be entitled to the moiety of the share of John Lylburn which had been conveyed by him to Field and Sylvanus Miller and Joseph Willard, and the several creditors of Sackett mentioned in his deed to Miller as cestui que trusts, claiming to be entitled to the other moiety of the share of John Lylburn conveyed by him to Sackett, against Ann Lylburn the widow and the executors and devisees of Robert Lylburn deceased; and in stating the rights and interests of the alleged tenants in common of the estate, it states the one sixth part thereof which was conveyed by John Lylburn to Sackett to be vested in Miller in trust for Willard and the other creditors named in the trust deed to Miller according to the trusts of that deed, and it simply deduces the title to that one sixth of the estate from John Lylburn to Sackett, and from Sackett to Miller. No allegation is made or notice taken of any trust, either express or implied, of the original conveyance to Sackett for Willard, nor is any suggestion or pretence made of any interest of Willard in the original purchase of Sackett, or any lien upon the property conveyed; nor is any mention made or notice taken of the order of Lylburn upon Sackett in favor of Willard, or of Sackett's acceptance of that order. But on the contrary, the complainants in that bill, (and Willard was one of them) expressly state that John Lylburn conveyed the moiety of his share of the estate to Sackett for the consideration of $3000, and that the same was afterwards, by indenture, reciting that he (Sackett) was the holder thereof, and that Willard claimed to have

a lien thereon conveyed to Miller upon the trust in the deed mentioned, and that Lylburn, at the times of the conveyances to Field and Sackett, as an inducement to them to accept the conveyances on the considerations therein mentioned, exhibited a schedule of the estate shewing it to be of the value of $45,000. or upwards, and verbally represented that to be the value thereof, and that Miller and those for whose benefit the conveyance to him from Sackett was made had applied for an account and partition of the estate; thus admitting the property conveyed by Lylburn to Sackett to have belonged to him, and the interest of Willard in it to have been acquired by the deed to Miller. A stronger disavowal of the trust and equitable lien now set up, and a clearer admission of Sackett as the source of Willard's title to the estate, could not be required by the complainant in this suit, and he, of course, could not be prejudiced by the knowledge he had of the contents of that bill.

But another objection to his title arising from that bill is that his purchases were made pending the suit, and with notice to him of the pendency of it; and were for that reason illegal and void. The rule is well settled that a party whose right is drawn in question by suit can make no effectual disposition of that right to a stranger during the continuance of the litigation, and before the right is established; and on this principle it is held that an interest acquired by a purchaser in the subject matter of a suit pending the suit, shall not avail against the plaintiff's title. This rule is essential to the purposes of justice, and its observance can alone render the suit effectual, or the judgment or decree of the court available to the prevailing party. It is a rule therefore which admits of but few exceptions, and ought not to be relaxed without controlling causes or upon urgent necessity.

Hence it is that a party who takes under a grant from a defendant pending the suit, though he may acquire a legal title, and is not a party to the suit, must abide the decision of the cause, and will be concluded by the decree against his grantor, and be liable to be turned out of possession by process upon it. This was the principle of the case of *Garhel v. Durdin*, (2 Ball & Beatty, 167,) where the plaintiff had

been decreed the possession of lands, and upon a writ of injunction to put him into possession, a tenant who had, pending the suit, taken a lease of the defendant was dispossessed, and a writ of restitution being applied for was refused, on the ground that a tenant so taking a lease pending the cause acquires no effectual title against the complainant. The lord chancellor held that whoever dealt with the defendant for an interest in the property after a bill filed, has dealt with it subject to such decree as might eventually be pronounced. (3 Ves. 314. 11 id. 104. 2 Atk. 174.)

In the case of *Murray* v. *Ballou*, (1 John. C. R. 566,) the purchase was made of Winter, a trustee, pending a suit against him for breach of trust, and for his removal from the trust, and after an injunction had been issued against him to restrain him from selling, which injunction had been served and was in force. The defence was the bona fides of the purchase as regarded the purcheser and his entire ignorance of the suit in chancery, and of the injunction in the cause; but the defence was overruled, and the purchase declared invalid, and he decreed to convey to Mrs. Green the cestui que trust, on the ground that the lis pendens was notice to the purchaser; and that although he had no knowledge in fact of the suit of Green against Winter when he made the purchase, he was nevertheless chargeable with legal or constructive notice so as to render his purchase subject to the event of that suit. The established rule was declared to be that a lis pendens duly prosecuted and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree. The same principle was recognized and acted upon in the case of *Murray* v. *Lylburn*, where the chancellor held the suit to be constructive notice to all the world of the claims of the cestui que trust, and observes that there is no principle better established, nor one founded on more indispensable necessity than that the purchase of the subject matter in controversy pendente lite does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation.

In these cases the sale which was avoided by the pendency of the suit was made by a party to the suit, and the thing sold was the subject of the litigation; and I apprehend that

those two features must distinctly appear in the contract of purchase and sale which is sought to be impeached on the ground of the lis pendens, to make the principle of that objection applicable to the case. It is a principle resting more upon the policy of the law and public convenience than upon any moral wrong in the purchaser, or private right in the party objecting to the purchase. In the case before me the purchases of the complainant were made, one of them of the assignees of Hart, and the other under an execution on a judgment against Sackett. Neither Sackett nor Hart, nor his assignees, nor Farrelly the judgment creditor, were parties to the suit; their rights and claims were disregarded by the complainants, and no decree or proceeding in the suit can bind them or affect their interest; and by parity of reason, none of the consequences of that suit as a lis pendens can attach to them. It is perfectly well settled that a decree in a suit can bind none but those who are parties, or acquire their rights from a party after the service of the subpœna, and pending the suit. Such a decree does not conclude or affect a stranger, or any person whose title accrued prior to the commencement of the suit, and who is not made a party to the bill. No principle of policy or convenience can require that they should be interdicted or restricted in the disposition of any right they may have in the subject in controversy between others, in a suit to which they are not parties, during the pendency of that suit; for as the decree that may be pronounced in it will not bind them or their interest, so it cannot bind or affect their assignees; and [it is wholly immaterial whether the rights they claim, which must remain open for litigation, are asserted and proved by themselves or those who may stand in their place. Besides, the right or lien of the judgment creditor, or of the complainant as assignee of the judgment or as purchaser under it, can in no just sense of the term be regarded as subjects of that suit, or be avoided as within the scope of that litigation. It was a suit for an account and partition, and the parties to it assume to represent themselves as solely interested in the estates, and proceed on that basis to dispose of the property and distribute the proceeds. They leave the interests and

the claims of others untouched and unimpaired; and it would be carrying the rule beyond the reason of it, to hold that those persons whose interests or claims are not noticed by the bill, and who are not parties to the suit, should be controlled or restricted in the free exercise of their power of alienation and right of disposal of their estates, until that suit shall be determined when the determination of it cannot conclude or affect them. (Newland, 507.)

Thus in the case of *Worsly* v. *The Earl of Scarborough,* where there was a question depending in equity upon the right to money secured upon an estate, but no question relating to the estate, a purchase of the estate pending the suit was held not to be affected by the pendency of the suit. (3 Atk. 392.) So in the case of *Moore* v. *M'Namara,* (2 Ball & Beat. 186,) where a creditor filed a bill against the devisee of the debtor for an account and sale, and there was a decree with liberty to the other creditors to come in and prove their demands. The devisee having a leasing power under the will of the debtor after the bill filed, made a lease of part of the lands devised pursuant to the power, and a motion was made for a direction to set up the devised estates, to be sold discharged of the lease; and the case of *Garhel* v. *Durdin* was cited. But the chancellor said that the case differed materially from that; for that the creditor only prayed to have the charge raised, and for an account consequently thereon, but that the title and possession of the estate was not drawn in question.

It follows that the complainant in this suit, as he did not purchase of a party to the suit of Willard and others against the executors of Robert Lylburn, nor under a judgment against any party to that suit, was not disabled by the pendency of that suit from acquiring rights under the judgment and sheriff's sale. Nor do I perceive any good reason why his title should be void as against the defendants by means of the statute against champerty. He derives his title from a judicial sale, and though he purchased pending a suit relative to the general estate of which the premises purchased by him were a portion, yet he did not purchase of a party to the suit, nor was the property he purchased the immediate subject of contest between the parties to the litigation.

In the case of *Jackson* v. *Ketchum*, (8 John. R. 479,) which was relied upon to shew that the purchase was an act of champerty, a sale was made by the defendant in the suit of premises for the recovery of which a verdict had been obtained, between the verdict and the judgment and with full knowledge of the verdict, and an action was there brought by the purchaser against the lessor of the plaintiff in the former action for the recovery of the same premises, and in which second suit the same questions arose that had been litigated in the previous suit; and under these circumstances it was that the court held the purchase to be an act of champerty and the deed inoperative and void.

That case, then, cannot govern this. Here was a judicial sale of a right not in litigation, and if the purchase of such an interest at such a sale is champerty, no purchaser at a sheriff's sale is safe, unless the party against whom the execution issues is in actual possession at the time of the sale. But if the sheriff's sale should be held inoperative for want of possession of the land by the debtor, or by means of an adverse possession against him at the time, the judgment cannot be affected by that circumstance, but it will continue a lien on the estate it originally bound, and all subsequent purchasers and possessors must take and hold subject to the charge it created.

It was contended that the judgment of Farrelly was paid before the sale was made under it, and the testimony of Sackett is relied upon to established that fact. Sackett testified that after the judgment was obtained against him, he caused a letter to be written to Farrelly, requesting to know the amount of his demand; that Farrelly stated in answer, that his demand amounted between $200 and $300; and that the complainant paid the sum to Farrelly, and he (Sackett) gave the complainant his note therefor. Giving entire credit to this statement, it is not sufficient to prove the allegation of payment; for there is no proof of the payment of the note, and Sackett himself consented to the execution on the judgment as a subsisting security and charge upon the estate. But the proof of payment was incompetent, for there is no allegation in the pleadings that the judgment was paid;

on the contrary, the bill alleges that it was unsatisfied, and the answer admits that it was so.

But it is said that the complainant is precluded by his claim under the deed from Sackett to Miller from setting up a claim under the judgment of Farrelly, as being inconsistent therewith. I do not perceive the incongruity of the claims. The deed from the assignees of Hart may not convey so large an interest as the sheriff's sale. The priority of payment of Willard's demand was, probably, supposed to reduce the value of the complainant's interest under his purchase from Hart's assignees, and when the actual state of the trust vested in Miller was discovered, and it was proved that the claim of Willard under it was insisted upon, the complainant would naturally be alarmed for his safety, and that may have been the reason of his purchasing the judgment and causing a sale to be made of the property under it for his security and indemnity. The lien of the judgment was prior to the deed to Miller under which Willard claimed, but it was not inconsistent with that deed any more than any incumbrance is inconsistent with the conveyance of the estate which it incumbers. Miller took the premises conveyed to him subject to that judgment ; and the complainant by acquiring that judgment, and by the sale under it, became vested with a prior right to that of Miller.

Nor do I think that the complainant has lost his rights by acquiescence or neglect. He was willing and desirous to come in as a party to the suit of Brewerton against the widow and executors of Lylburn, and have his rights settled in that suit ; but the parties to that suit would not admit him as a party, and he was driven to his original suit, which was commenced within a reasonable time.

But it is said he had an adequate remedy at law. That objection comes too late. If it was tenable, it should have been taken by way of demurrer, or have been insisted upon in the answer.

But his claim is of equitable cognizance. The estate of Robert Lylburn had been sold, and he had a right to affirm the sale and claim his proportion of the proceeds instead of

bringing his suit at law for the land. Besides, his right was of an undivided share, and he was entitled to a partition of the real estate and an account of the personal ; and on that ground he might elect to come into a court of equity in the first instance ; and considering the difficulties and embarrassments thrown in his way, and that an injunction was necessary as a measure of precaution to preserve his rights, he acted prudently in taking that course.

It remains to consider what relief the court ought, under the peculiar circumstances of this case, to give the complainant ? Am I to treat him as the purchaser of the whole interest in the one sixth part of the Lylburn estate, and on that basis decree to him the entire one sixth part or share of the proceeds of the real estate at the master's sale ? or is the court at liberty to disregard the sheriff's sale, and decree the complainant an incumbrancer entitled to the amount due upon the judgment of Farrelly with interest ?

If the court has the power to choose between these alternatives, equity would decidedly prefer the complainant's title to relief as the assignee of the judgment to that of purchaser at the sheriff's sale ; and as the purchaser was subject to be redeemed, and a decree of the amount due on the judgment is equally beneficial to him as a redemption would have been, I am unable to discover any insuperable objection to the principle of such a decree, but am led by many considerations to decide in its favor. The sale has not been consummated by a deed of conveyance, and the same premises were again sold within the year allowed for redemption, by the master under the decree of this court in the suit of Brewerton and others against Ann Lylburn and others, for partition ; the complainant stood by and saw the second sale and took no step to restrain it. The decree directing the sale in partition was prior to the sheriff's sale on execution. That decree professed to settle the rights of the parties and adjudge the distribution of the proceeds. It directed the proportional part of the share in question to be paid to Miller for the defendant Willard ; and notice of that decree was given at the time and prior to the sheriff's sale. It may be questionable whether the sale after such notice ought to have proceeded,

and certainly from the open disclosure of matters so directly and seriously affecting the title to the premises, and casting a shade upon it of so grave an aspect, strangers would be discouraged from bidding; and under such circumstances, the complainant who had full knowledge of all the circumstances, and best knew his own title, possessed advantages over others, of which equity would seem to forbid him to avail himself, especially as against the defendant Willard, who had so deep an interest in the estate, and was so circumstanced that he could not compete for the purchase without prejudice to his claims under the decree, and his opposition to the judgment as a lien on the land.

It would have been most equitable and just, as regarded all the parties, to have delayed the sale until it could be made under more propitious auspices. The defendant and his counsel acted under a mistake of his rights; but they acted on the faith of a decree of this court, which, on the face of it, fully recognized those rights, and which appears to have been known to the complainant in this suit. The complainant, in his capacity of execution creditor, on his part, with full knowledge of those circumstances, persisted in his legal rights under the judgment, and pressed those rights with severity upon his adversary. He has perhaps encroached in his pressure upon the rule which equity prescribes for cases similarly circumstanced; and, as he has acquired no legal title, but has agreed that the title of the purchasers at the subsequent sale under the decree in partition shall stand, and now makes his claim upon the proceeds; and as that sale precluded the exercise of the right which the defendant Willard, or his trustee for him, would otherwise have had to redeem the premises by paying the amount of the complainant's bid to the sheriff with interest: inasmuch, also, as his utmost right or equity as a judgment creditor would have been to have his judgment debt fully paid to him, and as moreover he became himself the purchaser at the sheriff's sale, I am clearly of opinion that equity will be best satisfied by restricting his relief to an indemnity to him as the assignee of the judgment; and I can discover no impediment growing out of the sale under the judgment, or the sheriff's certificate to an adjustment on that

principle. I do not mean to impair the right he may have acquired by his purchase, but it is manifest that I cannot give full effect to the sheriff's sale. The complainant claims the character of a purchaser without notice, but his purchase was subject to redemption, and I think I mete him the full measure of his equity by decreeing to him the amount paid by him for the purchase of the judgment, with interest from the time of the purchase, and payment of the consideration money for it, out of the fund in court in the first instance, and I accordingly so decree.

As to the question of costs, the opinions I have expressed on the merits would seem to give the rule. Both parties have been wrong. The complainant contended for much more than he has established, and the defendant has been but partially successful in his defence. This failure of each in the claims and pretensions urged by him in the controversy between them precludes either from any just claim for costs against the other, and each party must pay his own costs of suit.

Let it be referred to a master to ascertain and report the amount due on the judgment.

Carpenter and wife applied for a re-hearing, which was granted. The cause was thereupon re-heard before the present chancellor.

*H. W. Warner & J. Tallmadge*, for the complainant. No trust resulted to Willard. A resulting trust cannot be raised against the intention of the parties, nor in opposition to their written agreement. Neither can a resulting trust arise where the party advancing the purchase money looks to a different security than the title to the estate conveyed. It is essential, also, to a resulting trust, that the payment of the money be coeval with the giving of the deed ; and a resulting trust cannot arise unless the whole consideration for the whole estate, or for the moiety or third, or some other definite part of the whole, is paid. (*Gilman* v. *Brown*, 1 Mason's R. 212. *St. John* v. *Benedict*, 6 John. Ch. R. 116. *Steere* v. *Steere*, 5 John. Ch. R. 1. *Botsford* v. *Burr*, 2 id. 409. *Fawell* v. *Heelis*, Ambler, 724. S. C. Dickens, 485. *Hughes* v. *Moore*, 7 Cranch, 176. *Nairn* v. *Prowse*, 6 Ves. jun. 752.

759. *Cowell* v. *Simpson,* 16 id. 280. *Brown* v. *Gilman,* 4 Wheat. 255. *Bagshaw* v. *Spencer,* 2 Atk. 578. *Picket* v. *Dowdall,* 2 Wash. R. 106. *Representatives of Wm. Wragg* v. *Comptroller General and others,* 2 Dessau. R. 509.) Willard had no equitable lien or mortgage upon the estate conveyed by Sackett to Lylburn for the consideration money for his Virginia lands. An equitable lien or mortgage and a resulting trust depend much upon the same principles. The intention of the parties must be inquired into in both cases; and where there are written instruments, no extrinsic evidence as to the intention of the parties is admissible. (Rob. on Frauds, 94.) The acceptance of the order by Sackett was a personal engagement to pay the $3000 to Willard, when that sum should be received by him from the avails of the estate ; but no direct charge was created by it upon the property. The judgment recovered by Farrelly was a lien upon the estate in the hands of Sackett, which was paramount to any claim on the part of Willard for his demand of $3000. The purchase by the complainant under the judgment entitles him, as purchaser, to the whole estate. He at least is entitled to an allowance for the whole amount due upon the judgment, and not merely to the amount paid. (*Powell on Mort.* 143. *Darcy* v. *Hall,* 1 Vernon 49. *Long* v. *Clopton,* 1 id. 464. *Williams* v. *Springfield,* 1 id. 476.) The complainant is not chargeable with notice of the rights of Willard in the premises. The deed to Miller contains no evidence of any previous equitable estate in Willard. A purchaser is only bound to look into the deed to his grantor. He is not chargeable with notice of the contents of the antecedent deeds. (*Ferrars* v. *Cherry,* 2 Vern. 384. *Draper's Company* v. *Yardley,* 2 id. 662. *Mertins* v. *Joliffe,* Ambler, 313. Sugden's Law of Vendors, 499.) The complainant is not chargeable with notice of the two suits which were commenced in relation to the Lylburn estate, he not being either a party or privy to those suits. Nor were his purchases of the judgment and of the premises at the sheriff's sale void, because made pending such suits. The doctrine of lis pendens is not applicable to this case. It only applies where something in litigation is purchased, and from one of the par-

1830.

White
v.
Carpenter.

ties to the suit. (*Worsley* v. *The Earl of Scarborough*, 3 Atk. 392. *The Bishop of Winchester* v. *Paine*, 11 Ves. 197. *Murray* v. *Ballou*, 1 John. Ch. R. 576.) A bona fide purchaser from a trustee takes the trust estate discharged from the trust.; and where a party having notice conveys to one without notice, the grantee will not be presumed to have notice.

*R. Sedgwick*, for defendants. The complainant has no good title to the premises in question. He should shew his right to the same as a bona fide purchaser. Farrelly's judgment was not a lien upon the premises. (*Yeates* v. *Groves*, 1 Ves. jun. 280.) There is a distinction between a lien by a judgment and a specific equitable lien. Willard, in this case, had a specific equitable lien, which had a preference over the general lien created by Farrelly's judgment. Willard did not take such a distinct security as deprived him of this equitable lien. His lien could only have been divested by a bona fide sale without notice, not by a judgment. If Farrelly had no lien by virtue of his judgment paramount to Willard's equitable lien, the complainant could not acquire any such lien as the assignee of Farrelly. The complainant ought to have shown the sum due on Farrelly's judgment. He is chargeable with notice of the rights of Willard at the time of his purchase from the assignees of Hart and at the time he took the assignment of Farrelly's judgment.

THE CHANCELLOR. Before going into the general merits of the cause, it may be necessary to examine an objection made on the argument as to the extent of the order for a rehearing. It was insisted by the complainant's counsel that the order for rehearing was special, and was to be confined to the question whether any thing was due from Sackett on the Farrelly judgment. The order for rehearing appears to have been granted by the consent of the solicitor of the complainant, founded upon two petitions of the defendants. The grounds of complaint, as stated in the petitions, are that the judgment of Farrelly ought not to have been deemed a lien on the Lylburn property so as to give the complainant any claim on the money in court; and that the decree was founded on the assumption of the fact that the property had been conveyed to White under the sheriff's

sale, when in fact no such conveyance was ever executed. The order directs that the cause be reheard in regard to the question whether any thing and how much is due to the complainant, under or upon the judgment of Patrick Farrelly in the pleadings mentioned. This embraces the whole controversy so far as it has been decided against the defendants, except as to the question of costs. The late chancellor, had decided that White had no claim upon the fund by virtue of the deed from Sackett to Hart, as the property was conveyed to the latter subject to the prior equity of Willard to be first paid out of the proceeds of the sale; and the fund in court is admitted to be insufficient for that purpose. If this part of the decision was correct, the complainant was not entitled to any part of the fund unless it was due to him under or upon the judgment of Farrelly. The question as to the general costs in the cause was not embraced in this order for a rehearing; and in respect to those costs the decree could not be varied under this order, unless the complainants had elected to consider the cause open as to that question. On the argument the complainant's counsel did go into the question as to the validity of his paper title independent of the Farrelly judgment, which question I shall presently consider.

I think the defendant's counsel is under a mistake in supposing the late chancellor went upon the assumption of the fact that the property had been conveyed to White under the sheriff's sale. In the first place it is impossible to suppose it had been so conveyed. The sale took place in July, 1822, and this suit was commenced shortly thereafter. Long before the expiration of the time allowed for redemption the land had been sold and conveyed under the partition sales. And White, under the agreement made with the parties in that suit, in February or March, 1822, had also relinquished to the purchasers under the decree all his claim upon the land. When that agreement was made, if the judgment was a lien upon the premises, Willard and Miller as the owners had a right to redeem by paying the amount of the bid and ten per cent. interest thereon. The general lien of the judgment was turned into a specific lien to that extent; and the

rights of the parties in the fund produced by the sale in partition are at this time the same as they were in the land at the time the agreement of 1822 was made; as the sale in partition under that agreement rendered it impossible to perfect the title under the sheriff's sale. Although Chancellor Jones considered the sheriff's sale valid, it is evident he did not consider it as materially varying the rights of the parties, or he would have decreed the whole fund in court to the complainant, instead of the balance due on the judgment.

The deed to Miller gave a full and perfect lien upon the property to the extent of Willard's claim. And the title which White afterwards acquired, under the Hart conveyance, was only of the share of the surplus which would have belonged to some of the creditors if they had executed releases as required by the deed of trust. If the condition rendered the deed fraudulent as against the creditors of Sackett, that objection cannot be urged by those who claim title through that deed. The conveyance to Hart was not for the estate purchased of Lylburn; but it was for the share which Sackett appropriated for the payment of certain creditors, out of the surplus to be raised by Miller on a sale by virtue of the trust deed. It did not profess to do any act inconsistent with that deed, but merely assigned to Hart the share of the surplus to which Sackett claimed to be entitled under the deed. Willard, by the terms of the deed, was not required to execute any release to Sackett. As to the amount which was to be raised and paid to him, the deed was absolute and unconditional. Hart and his assignees and White took the interest of Sackett not only with notice of Willard's right under that deed, but they took it professedly subject to that right. The proceeds of the estate being insufficient to satisfy the amount due to Willard, the complainant derived no valid claim to any part of the fund under the conveyance from the assignees of Hart.

The only doubtful question in the case is that which the late chancellor decided in favor of the complainant. Was the Farrelly judgment a lien on the Lylburn property, so as to entitle the holder thereof to satisfaction out of that property in preference to the claim of Willard?

1830.

White
v.
Carpenter.

After a full examination of this part of the case, I have arrived at a different conclusion on this point from that of my learned predecessor.

I concur with him in the opinion that there was no resulting trust in this case which could vest the legal estate in Willard. Such a trust cannot be raised in favor of a person by the mere payment of the purchase money, if it is not the intention of either party that the legal estate should vest in him. The office of a resulting trust is to carry into affect the intention of the parties, not to defeat that intention; and it can never be raised in opposition to the written agreement of the parties on which the conveyance was founded. (6 John. Ch. Rep. 111.) The writings in this case show that it was the intention of the parties to vest the legal estate in Sackett, for the purpose of enabling him to raise money thereon for Willard to the extent of $3000. Notwithstanding the loose testimony of Sackett, I have not the least doubt, from the other testimony and from the written evidence in the case, that the transaction was substantially as stated in the answer of Willard. Although the deed is dated on the 19th of March, one day previous to the date of the other papers, it was not recorded until the twenty-first. And I think there is evidence on the face of the papers themselves to show that the actual consummation of the conveyance to Sackett, the execution of the bond to Lylburn for the Virginia lands given in exchange, the making of the order for the payment of the $3000 out of the proceeds of the Lylburn property and the acceptance thereof by Sackett, were all one transaction. These instruments must therefore be taken and construed together. (1 John. Ca. 91. 13 Mass. Rep. 51. 1 Paige's Rep. 455. 1 Greenleaf's Rep. 11.) Taking all these writings, which were executed at the same time and in relation to the same subject matter, and construing them together, there is no resulting trust so as to vest the legal estate in Willard. But there is an appropriation of the proceeds to be raised on the sale of the property, for the specific purpose, in the first place, of paying the $3000 to Willard. It was in substance a declaration in writing on the part of Sackett that he had received the conveyance from Lylburn,

in trust to sell or mortgage the property for the purpose of raising the $3000 for Willard, in satisfaction for the lands given in exchange, and to retain the residue of the proceeds for his own trouble and commissions in effecting such exchange. If he had given to Willard a writing containing an express declaration that he held the lands on that trust, can there be any doubt that equity would compel a specific performance thereof? This view of the case is corroborated by the recitals in the trust deed to Miller. If the rights of third persons had not intervened, can there be any doubt in this case that a court of chancery would have compelled Sackett to execute the trust, by selling the estate and applying the proceeds as directed in the order accepted by him? If such was not the object and intention of Sackett at the time this exchange took place, he intended to commit a gross fraud upon Willard; and the court must in that case convert him into a trustee for the person intended to be defrauded. Sackett had a right to sell the estate and receive the money therefor, as such was the manifest intention of the parties. But as the proceeds of the sale, to the extent of $3000, were specifically pledged and appropriated to the payment of Willard's claim, a creditor of Sackett would not have been permitted to receive a conveyance in satisfation of an antecedent debt. If Sackett had sold the property to a bona fide purchaser, or had mortgaged it to secure money loaned on the credit thereof, the purchaser or mortgagee would have been protected; and would not have been holden for the application of the fund. But if any person had advanced money thereon with a knowlndge that Sackett intended to defraud Willard out of his purchase money, such person could not be considered a bona fide purchaser.

If Willard had a specific lien upon the proceeds of the property, he is entitled to a preference over the general lien of a judgment creditor of Sackett. At law a judgment is a general lien upon all the legal interest of the debtor in his real estate; but in chancery that general lien is controlled by equity so as to protect the rights of those who are entitled to an equitable interest in the lands, or in the proceeds thereof. I have recently had occasion to examine that ques-

tion in the case of Howe and wife, (1 Paige's Rep. 125,) and it would be useless for me to re-examine the authorities referred to on that occasion. The judgment of Farrelly only attached upon the interest which Sackett had in the real estate of Lylburn after satisfying Willard's debt. And as White had notice of Willard's claim previous to the sale under that judgment, the only effect of his purchase was to turn what was before a general lien upon the surplus, if any there should be, into a specific lien thereon to the extent of his bid. The decree of June, 1827, must therefore be modified so as to declare that the defendants Carpenter and wife, as the legal representatives of Willard, are entitled to the fund in court, or to so much thereof as is necessary to satisfy the $3000 and interest thereon from the date of the trust deed given to Miller.

If the question of costs was now open, I should not be inclined to allow them against the complainant, under the particular circumstances of this case. At the time the bill in this cause was filed, it was not known what the proceeds of the Lylburn estate would amount to. The complainant was certainly entitled to a preference over the creditors of Sackett named in the schedule annexed to the trust deed, at least to the extent of what was due on the judgment; and he has litigated in good faith. I think also that the order for a rehearing precludes me from altering that part of the decree which denies costs to the defendants.