Cook and Kane *against* Mancius and Visscher.

An incumbrancer, *pendente lite,* need not be made a party to a suit for the foreclosure of a mortgage; and he is not entitled to redeem, unless under special circumstances : as where he became a judgment creditor after the commencement of the suit, but before the decree, and the purchaser at the master's sale had previous notice of the judgment, and by a previous engagement with the mortgagor, obtained from him an order for the surplus moneys, which was accepted by the master.

The Court does not take notice of a purchaser of the subject matter, pending the suit.

Where a trustee, and his *cestui que trust,* as plaintiffs, file their bill, and pending the suit, the *cestui que trust* assigns his interest to another, it is no objection at the hearing, that the latter was not made a party.

*Jan.* 19, 1821.

THE bill, filed *August* 6, 1818, stated, that the plaintiff, *Cook,* on the 9th of *July,* 1817, obtained a judgment in the Supreme Court, against the defendant, *Visscher,* for 1,725 dollars and 92 cents, which was in trust for the plaintiff, *Kane.* That a *fi. fa.* was issued on the judgment, under which, and other executions, the sheriff sold the personal property of *V.* for 357 dollars : and on the 24th of *July,* 1818, he sold at public auction, to the plaintiff *C.,* as the highest bidder, for ten dollars, all the interest of *V.* in a certain piece of land in *Water Vliet,* of which *V.* was seized, subject to a certain mortgage, which *Gerrit G. Van Zandt,* who was seized of the land before the purchase thereof by *V.,* gave to *Henry Ostrom,* on the 22d of *May,* 1810, to secure the payment of 2,785 dollars. That proceedings having been had in this Court for a foreclosure of the mortgage, a decree for the sale of the premises was entered on the 25th of *May,* 1818. That the defendant *V.,* after the judgment, and before the sale of the premises, in order to defraud the plaintiff *K.* of the benefit of the judgment, sold the premises, · without consideration, to the defendant *Mancius,*

Vol. V.                    12 .

and by deceitful representations to the solicitor and counsel of the mortgagee, procured the decree for sale to be entered with directions that on the sale the surplus moneys, if any should remain, after satisfying the mortgage debt and costs, should be paid over to the defendant, *V.* That on the 21st of *July*, 1818, the master sold the mortgaged premises at auction, under the decree, to the defendant *M.*, for 2,000 dollars. That the balance of the mortgage debt, with the costs, amounted to 1,080 dollars. That *M.* had notice of the judgment, and that it was unsatisfied. That *M.* endeavoured to conceal from the plaintiffs that the premises were to be sold under the decree, at the time mentioned. That on the day of sale, *C.* offered to pay the master the amount due on the mortgage, with the costs, which he refused to take ; and immediately after the sale, *C.* gave a written notice to the master, that he was the holder of an unsatisfied judgment, in trust for *K.* and as such, was entitled to the surplus of the purchase money remaining, after payment of the mortgage debt and costs. That the plaintiffs, as soon as it was in their power, after the sale, obtained an order of this Court, requiring the master to pay the surplus into Court ; but the master reported that he had paid the money over to *V.* That *M.* did not pay the 2,000 dollars bid by him at the sale, but only the amount due on the mortgage and the costs, being 1,080 dollars. That *M.* acted as the agent of *V.*, and for the purpose of defeating the claim of plaintiffs, purchased the land, under an agreement with *V*, that the residue of the 2,000 dollars, after deducting the mortgage debt and costs, should be deducted from the consideration agreed to be paid for the land, in case he should be obliged to pay the residue to the plaintiffs. That *V.* has never received from *M.*, the residue of the purchase money. That the plaintiffs have applied to the defendants for the residue of the purchase money, or a transfer of the premises, on receiving the amount of the mortgage debt and costs,

which the defendants have refused. That *M.*, before the sale, knew that *V.*, by fraudulent artifices, had procured the order of sale to be so drawn, as to the payment of the surplus moneys. *Prayer*, that the defendants may be decreed to pay into Court, or to the plaintiffs, the surplus of the purchase money, being 920 dollars ; or that they execute a deed to the plaintiff *K.*, for the land; and pay the costs and charges, &c. and for general relief.

The *answer* of the defendants admitted the judgment, &c. but denied that it was in trust for *K* It stated, that the suit in which the decree of sale was made, was brought by *Ostrom*, as plaintiff, against *Van Zandt* and his wife, *L. Standford*, and *Visscher*, defendants, and that the decree directed that after paying the mortgage debt and costs, " the residue of the money, if any, should be paid to the defendant *V.*" That *C.* attended the sale, and was a bidder. That the plaintiffs, before the sale, were duly apprised of it, and knew that they were not parties to the decree, and that the surplus moneys were to be paid to *V.* under it. The defendant *M.* stated, that on the 21st of *July*, 1818, *V.* was justly indebted to him in the sum of 212 dollars and 15 cents, and that the principal inducement of *M.*, in attending the sale, was to secure that debt, *V.* having since become wholly insolvent. That in *June*, 1818, *M.* applied to *V.* for information respecting the premises so to be sold under the mortgage, and it was agreed between *M.* and *V.*, that *M.* should take an order from *V.* on the master who should sell, for the surplus moneys, if any, arising from the sale, in full of his demand against *V.* That the order was accordingly drawn on the day of sale, but before it was made, and *M.*, in consideration of that order, discharged *V.* from the demand he had against him ; and after the sale, the master, on the same day, accepted the order. That the whole transaction was in good faith, and without any intent to defraud the plaintiffs. That *M.* confided in the decree, and in the validity of any acts done, *bona fide*, under it. *M.* admitted that he

1821.

Cock
v.
Mancius.

knew of the judgment in favour of *C.*, but alleged that he supposed the acts above stated were fully protected by the decree. That the plaintiffs had notice of the proceedings in Chancery to foreclose, in time to have applied to the Court. The defendants did not use any contrivance to conceal from the plaintiffs, that the premises were to be sold on the 21st of *July*, 1818, or at any other time. And they alleged, that the bill of foreclosure was filed *January* 25, 1813, and the plaintiffs had legal notice of it. They denied that *C.*, at the time of the sale, or at any other time, offered to pay the master the amount of the mortgage debts and costs, or that he refused it; but they alleged, that the surplus moneys had been legally and fairly disposed of, by the master's acceptance of the order of *V.*, prior to any written notice to him from *C.* They denied that *M.* acted as the agent of *V.*, in the purchase of the premises, or with a view to defeat the collection of the judgment, or with any fraudulent purpose, or upon any agreement, that the surplus moneys were to be deducted from the consideration, if *M.* should be compelled to pay it to the plaintiffs, or upon any trust whatever; but that the purchase was made exclusively for the benefit of *M.* They denied, that they, or either of them, procured the decree to be drawn in the manner above stated. *M.* admitted, that a few days before the sale, he understood from *V.*, that by the decree, *V.* was entitled to the surplus moneys, if any, arising from the sale, and *M.* called at the office of the solicitor of *Ostrom*, and saw the decree.

Witnesses were examined on both sides, and exhibits made in the cause. The material facts not admitted in the pleadings, are stated in the opinion of the Court.

*W. A. Duer*, for the plaintiffs.

*J. V. N. Yates*, for the defendants.

'THE CHANCELLOR. The plaintiff *Cook* obtained a judgment at law against the defendant *Visscher*, on the 9th of *July*, 18'7. There was, at that time, and had been for some time previously, a suit pending in this Court, by *Henry Ostrom*, to foreclose a mortgage given by *Gerrit G. Van Zandt*. The defendant *Vesscher*, who was a purchaser under *Van Zandt*, and owned the equity of redemption, was a party to the bill of foreclosure. A decree for the sale of the mortgaged premises was obtained on the 25th of *May*, 1818, and a sale made by the master on the 21st of *July*, 1818, and the defendant *Mancius* became the purchaser for 2,000 dollars, which was 920 dollars beyond the balance of debt, interest and costs due, at that time, to *Ostrom*. The plaintiffs now seek to recover that surplus from *Mancius* the purchaser, or else to redeem the mortgaged premises, or for some other general relief, under the special circumstances disclosed in the case.

The plaintiff was a junior incumbrancer, and became such pending the mortgage suit, but it was long prior to the decree, and it would seem upon principles of equity, that he was entitled to have his judgment satisfied out of the residuary interest of the defendant *V.*, in the land, after the mortgage debt and costs were paid. He had an equitable lien upon that equity of redemption, or upon the surplus moneys arising upon the sale. By the terms of the decree in *Ostrom's* suit, (and which terms were procured as will be hereafter explained,) the residue of the moneys, if any, were directed to be paid over to the defendant *V.*, in whom the equity of redemption resided; and they were paid over, by his order, to the defendant *M.*, so as entirely to exclude the claim of the present plaintiff. If the plaintiff had been a judgment creditor *at the commencement of the suit* to foreclose the mortgage, the mortgagee would have been bound to have made him a party, or else the decree and sale would not have taken away his right to redeem, even as against *Mancius* the purchaser. This prin-

1821.

COOK
v.
MANCIUS.

1821.

Cook
v.
Mancius.

An incum-
brancer *penden-
te lite,* need not
be made a par-
ty; and he is
not entitled to
redeem, unless
under special
circumstances;
as where the
plaintiff became
a judgment cre-
ditor after the
commencement
of the suit to
foreclose the
mortgage, and
prior to the de-
cree of fore-
closure and
sale, and the
purchaser had
notice of the
judgment, and
of the *lien* of the
plaintiff on the
surplus moneys.

ciple was discussed and sufficiently explained in the case of *Haines* v. *Beach*, (3 *Johns. Ch. Rep.* 459.) and in the authorities there referred to. But the present plaintiff became an incumbrancer *pendente lite*, and therefore according to the doctrine, in the case of *The Bishop of Winchester* v. *Paine*, (11 *Vesey.* 194.) it was not necessary that he should have been made a party, and he has no right to redeem. This may, perhaps, be true as a general proposition, but the special circumstances of this case ought to take it out of the general rule. Here the plaintiff became a judgment creditor prior to the decree, and the purchaser had notice of his judgment and of his claim upon the surplus moneys prior to the sale, and there is reason to infer some understanding and arrangement, between the two defendants, intentionally and studiously to divert the surplus moneys from the plaintiff to themselves. If the facts will warrant this conclusion, the prior notice of the plaintiff's claim upon the surplus moneys may operate upon the purchaser equally as if the plaintiff's incumbrance existed prior to the commencement of the suit upon the mortgage. Equity attaches great importance to *notice* of another's claims or pretensions, and generally charges a party, whether he be a purchaser or otherwise, who acts regardless of such notice, with all the duties that such claims impose. Though the mortgagee is not bound to take notice of incumbrancers who became such, *pendente lite*, yet such an incumbrancer acquires a lien upon the residuary interest of the debtor, which this Court does regard, in a variety of cases; and I presume that upon due application by such a creditor, the Court would not suffer the surplus moneys, after the prior incumbrance was satisfied, to pass into the hands of the debtor. Here the mortgage suit had been pending since *January*, 1813, and can it be possible that all subsequent incumbrancers, however slow may be the progress of the mortgage suit, are to be utterly disregarded? If the mort-

gagor can take or appropriate to himself the surplus money, or the cash value of the equity of redemption, and the purchaser can also buy with notice of the subsequent incumbrance and of the claim of the creditor to the surplus, and yet hold the land discharged of any right of redemption, the lien of the subsequent creditor is utterly defeated, and becomes of no value. That right is entitled to some efficient protection, and the subsequent judgment or mortgage creditor must have a right, either to come in and be made a party, so as to secure his claim upon the surplus, or if he can charge the purchaser with previous notice of his judgment, and of his claim under it upon the equity of redemption, he must be entitled to redeem equally as if he had been an incumbrancer at the commencement of the suit.

1821.

Cook
v.
Mancius.

Before we look more particularly into the facts in this case, there are one or two preliminary points to be disposed of.

It has been made a question, whether the plaintiff *Cook*, was a competent witness in the cause, inasmuch as he may be responsible for costs, though a naked trustee. But as his testimony does not appear to be essential to the determination of the case, I have assumed, for the purpose of this discussion, that the objection to the competency of his testimony was well founded, and have not regarded it.

Whether a naked trustee, who is plaintiff, can be made a witness, though liable for costs?

Another objection is made to the want of parties. The plaintiff *C.*, the legal owner of the judgment avers, that he holds it only as trustee for *James Kane*, who is a party to the bill. We have, then, the trustee and *cestuy que trus* parties to the bill. But it was vaguely intimated in the answer, put in upwards of a year after the bill was filed, that *Oliver Kane* had some interest in the judgment, and it was proved by one of the witnesses, *Thomas Bridgen*, that the plaintiff *K.* informed him that his interest in the judgment had been assigned to *O. K.* When this information was given, or the assignment made, does not appear. He

1821.

Cook
v.
Mancius.

Where a trustee and his *cestuy que trust* are plaintiffs, and pending the suit the *cestuy que trust* as signs his interest to another, it is no objection at the hearing, that such assignee is not a party.

The Court does not take notice of the purchase of the subject matter, *pendente lite.*

was examined as a witness, in *June*, 1820, and he says, that *O. K.* informed him of the same fact, " some time ago." The bill was filed in 1818, and we may as well intend that this assignment was made after, as before the filing of the bill ; and if the defendants meant to rely upon so formal and technical an objection, it was incumbent upon them to have shown clearly the existence of the fact at the commencement of the suit. A change of interest from the *cestuy que trust* to another, *pendente lite,* can hardly be admitted as sufficient to support the objection, at the hearing, of a want of parties, when we have before us the party in whom the legal title resides, and the *cestuy que trust* existing at the filing of the bill. The Court is not bound to take notice of any interest acquired by purchase in the subject matter of a suit pending the suit.

The facts connected with the sale, form the equity of this case. *Mr. Henry,* the Solicitor for *Ostrom,* the plaintiff in the mortgage suit, says that he drew the decree of sale, and inserted therein the usual clause, " that the residue (if any) of the moneys be brought into Court, to abide the order of the Court," and that those words were, afterwards, obliterated from the draft, and the words " paid to the defendant *Visscher*" substituted, *at the instance and upon the application of the defendant V.* That alteration has probably produced the present suit. The solicitor acted without the knowledge of any judgment creditor existing entitled to the surplus, and without any suspicion of the design of the defendant *V.,* who knew of the judgment, and who concealed that knowledge from the solicitor. Mr. *Henry* says he believed that *V.* would be entitled to the surplus moneys. The concealment from the solicitor, when he was requested to alter the decree, of the fact of there being an unsatisfied judgment creditor, whose lien attached upon the equity of redemption, is the circumstance of which I complain. It may be laid down as a clear rule of ethics, that it is wrong to procure an act to be done, which would

not have been done, if a material and pertinent fact known to one party and not to the other, had been disclosed.

1821.

Cook
v.
Mancius.

The decree was entered in *May*, 1818, as of course, and there is no evidence that the judgment creditor had any knowledge of the pendency of the suit upon the mortgage, until within a few days of the sale. In *June*, 1818, an arrangement was made between the defendant *V.* the owner of the equity of redemption, and the defendant *M.*, the subsequent purchaser at the master's sale, to secure those surplus moneys for their joint benefit. It would appear from the answer, that the defendant *V.* was indebted to the defendant *M.* on simple contract to the amount of 212 dollars and 15 cents; and the latter applied to the former for information respecting the mortgage suit, and the land to be sold under the mortgage, and understood from him that by the decree, the defendant *V.* would be entitled to the surplus moneys; and for his greater satisfaction, the defendant *M.* called at the solicitor's office to look at the decree. The subsequent agreement between the two defendants, made on the 20th of *June*, 1818, was, that the defendant *M.* should accept of an order from the defendant *V.* upon the master, for the surplus moneys, whatever they might be, in full of the above simple contract demand. On the day of sale, the defendant *M.* attended as a bidder, and on that day, but previous to the sale, the order was drawn. He says, that his motive in attending the sale, was to purchase, in order to secure his demand, according to the above arrangement. The defendant *M.*, accordingly discovered an anxiety to have the sale go on, and urged it on, though the plaintiff's counsel was present and pressing a postponement. The latter offered his check, or that of another person, for the mortgage debt and costs, to the agent who attended on behalf of the solicitor for *Ostrom*, the mortgagee. The plaintiff *C.* offered, moreover, to procure the money, if the check was objectionable, but he was referred to another immediate agent of *Ostrom*, who was present, and does not recollect

that any such offer was made to him. The sale was made, and the conveyance to *M*, the purchaser, executed, and the whole transaction consummated with a rapidity that is rather alarming. Immediately upon the sale, the order of the defendant *V.*, in favour of the defendant *M.*, was accepted by the master as equivalent to a payment of the surplus moneys, and the defendant *M.*, on the same day discharged the defendant *V.* from his demand, and retained to himself the surplus value of the bid, after satisfying his simple contract debt; the residue of that surplus so retained, as a gratuity from the defendant *V.*, amounted to 704 dollars and 85 cents. The answer says, that the surplus moneys were legally and fairly disposed of by the acceptance of the order.

The plaintiff *C.*, who had made unavailing efforts to stay the sale, or to discharge the mortgage debt, and preserve the lien of his judgment, took other steps to prevent the surplus moneys from passing under the control of the defendant *V.* Here, also, his vigilance failed him. The attorney for the plaintiff *C.*, and in his name, gave written notice to the master *immediately upon the sale*, that he was the holder of an unsatisfied judgment as trustee of the plaintiff *K.*, and that he was entitled to the surplus moneys on the sale of that day. It seems extremely probable from circumstances, that this notice came immediately to the knowlege of *M.*, the purchaser. He had a conversation with the attorney of the plaintiff *C.* prior to the sale, relative to the plaintiff's judgment; and just before the sale the defendant *M.* had a conversation with the plaintiff *C.*, relative to the amount necessary to be bid, in order to make the requisite surplus to satisfy the judgment. The purchaser *M.* was thus duly apprized, when he purchased, not only of the existence of the judgment, but of the actual and avowed claim of the plaintiff *C.* to the surplus. The master as well as the purchaser

disregarded this notice; but I do not mean to implicate him in any censure, for he followed the words of the decree, as they had been inserted, at the instance of the defendant $V$., directing the surplus to be paid to the defendant $V$. He accepted the order of that defendant, as a payment to him of the surplus moneys, amounting to 920 dollars, and on the succeeding day he made his report of the sale, and of the disposition of the purchase money. It was not until the third day that the plantiff $C$. was able to apply to this Court, and obtain an order upon the master, to bring the surplus moneys into Court. That order, unfortunately for the plaintiff, was obtained a day too late.

The defendant $M$., by this arrangement with the defendant $V$., and by his purchase, with knowledge of all the equity of the plaintiffs' case, and with explicit and monitory notice, not only obtains payment of his simple contract debt, out of land bound by a judgment, and in preference to that judgment, but he makes an absolute profit of 704 dollars and 85 cents; nor is this all. On the 15th of *August*, 1818, (being only twenty-five days after the sale, but subsequent to the commencement of this suit,) he contracts to sell the land for 4,000 dollars, and a deed was afterwards executed in pursuance of that contract, and the consideration secured.

It appears to me, that the plaintiff's lien upon the equity of redemption ought not to be defeated by the transactions which took place, and that he has pressing claims upon the Court for its assistance. There can be but one question in the case, and that is, as to the most suitable and effectual relief to be afforded to the plaintiff. The prayer is for general, as well as for particular relief; and any relief may be granted suitable to the case, and consistent with the allegations and proofs. I consider that the plaintiff is entitled to redeem, as against such a purchaser, acting with such previous arrangement with the owner of the equity of redemp-

A person who has obtained a judgment against a mortgagor, pending the suit by the mortgagee for foreclosure, and prior to the decree, was allowed to redeem, as against the purchaser at the master's sale, acting with notice of the lien of the judgment creditor, and under the circumstances of the case.

tion, and under such notice, equally as if his judgment had existed prior to the suit upon the mortgage. To limit the remedy to the amount of the surplus, in the hands of the purchaser, would be depriving the judgment creditor of his lien upon the equity of redemption, and substituting for it inferior personal security. And, in the next place, the surplus moneys may fall short of the amount of the judgment, though the real value of the equity of redemption might go far beyond that amount. Upon the principle which I apply to the case, and which is, that the judgment creditor under the special circumstances, has a right to redeem, notwithstanding the sale, he is entitled to his lien unimpaired, and is not to be turned over to any personal security whatsoever; nor is he, in this case, to take the sale by the master, as a test of the value of his security. He is entitled to redeem the prior incumbrance, by refunding the amount of it to the defendant *M.*, together with the costs of that suit, and by having the land disposed of to satisfy both the incumbrances.

I shall, accordingly, decree a reference, to ascertain the amount due to the plaintiffs, and that the defendants pay the amount thereof, together with the costs of this suit, within thirty days after notice of this decree; or in default thereof, and upon the plaintiff's bringing into court, for the use of the defendant *M.*, the 1,080 dollars, (the amount of the mortgage debt and costs,) together with interest thereon, from the 26th day of *July*, 1818, (the time of the purchase,) and upon bringing into Court, to be cancelled, the sheriff's deed upon the sale of the mortgaged premises to the plaintiff *C.*, on the 24th of *July*, 1818, that then, and in such case, the premises be sold by a master, on the usual notice, to satisfy the mortgage debt and costs and interest, and the amount to be reported due to the plaintiffs upon the judgment, and the 10 dollars paid on the purchase under the sheriff's sale, and the costs of this suit.

Decree accordingly.