McMILLAN, ET AL. v. GORDON & STODDARD.

1. Where a suit was pending for the foreclosure of a mortgage, and a sale of the premises, the solicitor of the complainants, with their approbation, received of a friend of the mortgagor a part of the debt intended to be secured, agreeing that he should *pro tanto* have a lien on the mortgaged property. Held, that the arrangement made the friend, thus advancing money, an assignee in equity, to the extent of the sum advanced; that the mortgagor, or a junior incumbrancer, upon taking an account, could not avail themselves of it as a partial extinguishment of the debt; and *further*, that the friend was not a necessary party to the bill.

WRIT of Error to the Court of Chancery sitting at Mobile.

The defendants in error filed their bill for a foreclosure of a mortgage, which had been executed on real estate, situate in the City of Mobile, for the payment of a debt of about four thousand dollars, owing to them by the plaintiff McMillan. From the bill as amended, it appears, that since the execution of the mortgage, McMillan, the mortgagor, had sold and conveyed the mortgaged premises to Thomas Irvin, who, since the service of the *subpœna* in this case, has died, leaving a will, in which ————— of Mobile is appointed executor, (who has duly qualified,) and Richard Irvin, of New York, sole heir and devisee. McMillan, Richard Irvin, and Daniel Wheeler are made defendants ; and afterwards, by consent of parties, Geo. W. Heard, James Haughton, and Theodore P. Hale, doing business under the style of James Haughton & Co., were made parties defendant. Afterwards Haughton & Co. filed their cross-bill against the complainants and the other defendants, with the exception of Daniel Wheeler, setting up a junior incumbrance upon the mortgaged premises, and praying a foreclosure and sale. Haughton & Co. also answered the bill of the complainants, admitting they had understood something was due upon complainants' mortgage, &c.

At a term of the Chancery Court, holden in April, 1842, a reference was made to the Master, to ascertain and report the state of accounts. And immediately thereafter a report was made, embodying the evidence adduced before the Master, and

stating the amount due on complainants' as well as Haughton & Co.'s mortgage. Exceptions were filed by both parties, which were overruled, and a decree rendered in conformity to the report.

The only question raised is, whether nine hundred and fifty dollars and twenty-five cents, paid by the attorney of the complainants, to them or their order, is to be considered as extinguishing *pro tanto* their mortgage. So much of the evidence as may be material will be here stated.

Gustavus Horton states, that, as the agent of complainants, he received at different times since the institution of this suit, viz : between February 15th, and December 29, 1841, both inclusive, nine hundred and fifty dollars and twenty-five cents of J. G. Aiken, and remitted the same to complainants, as money paid by Mr. Aiken, as their attorney, on collections made upon the notes secured by the mortgage.

J. F. Adams deposes, that he heard the complainant, Stoddard, state to one of the firm of Haughton & Co., that there was due on the mortgage sought to be foreclosed, between twenty-one and twenty-two hundred dollars. He also heard him say, that he had never authorized any one to assign their interest in the mortgage ; that they had received remittances from their agents on the mortgage in payment, and that the amount above stated, was about what was due. These remarks were made by Mr. Stoddard between the first of June and first of September, 1841.

J. G. Aikin, the solicitor of the complainants, deposes, that he was their attorney, and had authority from Dr. Shaw, their agent, to collect the money and manage the suit as he thought fit ; and complainants in one of their letters say to him, " that they do not wish even to appear to interfere with the instructions given witness by F. Shaw & Co." The witness in his his solicitude to raise some part, or all of what was due on the mortgage, induced McMillan to get his friend John King to advance the money paid by witness to F. Shaw & Co., and forwarded by the latter to the complainants, on the assurance that a lien on the mortgaged premises should be given to King for his advances, and the amount should be refunded out of the proceeds of the sale. McMillan paid the money to the witness in the name of John King, and the witness acknowledged

in a receipt, that the payment was made by the latter, and was to be refunded out of the proceeds of the sale.

It was the intention of the witness, and he thinks he so informed F. Shaw & Co., at the time he paid them the moneys, that they were not paid by McMillan, or for him, but by another individual.

Witness did not inform the complainants how he had raised this money, until after the conversation of Stoddard, as related by Mr. Adams ; when, learning that they had misapprehended the matter, he informed them what had been done, and stated, if the arrangement met their approval, more money, and perhaps all due on the mortgage might be raised. That the suit for a foreclosure and sale would still progress, as if the money had not been paid, &c. In answer to the letter communicating this information, the complainants say, "in your letter of October 31st, which, by the way, was perfectly satisfactory, you say our debt is amply secured, but we suppose we shall not realize the whole of it before next September, in case we wait the issue of the suit. As we mentioned to you, Messrs. Haughton & Co. are our friends and neighbors, and we wish to favor them all we can in this matter."

Witness considered the payments made by him to Shaw & Co., as a mere matter of account between witness and complainants, and not affecting in any way the amount of the mortgage debt. But the receipt of the money paid Shaw & Co. was from McMillan, who represented himself as the agent of King.

ADAMS, for the plaintiffs in error. The nine hundred and fifty dollars twenty-five cents, whether advanced by McMillan or King, is a payment *pro tanto*. [1 Porter's Rep. 423.] But the proof shows that this money was paid by McMillan ; at any rate, that it was so received by the complainants.

The solicitor or attorney at law of the complainants had no power to assign the mortgage, or to stipulate with King, that he should stand in the place of the mortgagees, and have a lien for money which he might advance as the friend of the mortgagor. [5 Vern. Rep. 346 ; 1 Bailey's Rep. 437 ; Gallett v. Lewis, 3 Stew. Rep. 23 ; Kirk v. Glover, 5 Stew. & P. Rep. 340 ; Craig v. Ely, id. 354. See also 1 Porter's Rep. 212.]

McMillan, et al. v. Gordon & Stoddard.

No counsel appeared for the defendants.

COLLIER, C. J. — The facts stated in the two affidavits first recited in the record, unexplained by what Mr. Aikin deposes, would lead to the conclusion that the moneys paid by him were intended *pro tanto* to extinguish the mortgage ; but his affidavit very satisfactorily repels any such inference.    Mr. A. states, that the instructions given him by F. Shaw & Co., the agents of the complainants, made him anxious to raise the amount due on the mortgage, or some part of it, as soon as possible ; and, without waiting a foreclosure and sale, he induced the defendant to procure his friend, John King, to make an advance for him, under an assurance that he should be reimbursed from the proceeds of a sale of the mortgaged premises ; that the advance was made and paid over to the agents of the complainants, and that the latter, when advised of the circumstances, approved of the manner in which the collection was made ; that the money was received by Mr. A. of McMillan, as the agent of King, and was considered by him as a mere matter of account between himself and the complainants.

These circumstances do not, in our opinion, show that the mortgage became inoperative to the extent of the moneys paid, but rather that King became assignee in equity, and was entitled to the benefit of the mortgage thus far, as a means of securing the repayment of his advance.    It is certainly competent for all the parties to a security of this nature, to agree that if a third person has or shall advance money to the mortgagee, he shall stand in the situation of an assignee, and enjoy all the rights of his assignor.    To consummate such an arrangement, it is not necessary that it should be evidenced by writing, but will be effectual in a court of equity, though it be verbally made.    In this view of the case, the only question is, can a decree be rendered in favor of the complainants, for the amount due, including the advance by King, or in order to the recovery of the latter sum, should King have been joined as a party ? The bill was filed by the proper complainants, and to have associated King with them, would have made it demurrable ; for his interest did not accrue until his money was paid to Mr. Aikin, which, we have seen, was subsequent to the institution of

the suit. In Cook v. Mancias, (5 Johns. Ch. Rep. 89,) a trustee and *cestui que trust* filed a bill in equity, and pending the suit, the *cestui que trust* assigned his interest to another; the question was, whether the assignee should not have been made a party. The Chancellor said: " A change of interest from the *cestui que trust* to another, *pendente lite*, can hardly be admitted as sufficient to support the objection at the hearing, of a want of parties, when we have before us the party in whom the legal title resides, and the *cestui que trust* existing at the filing of the bill. The Court is not bound to take notice of any interest acquired by purchase in the subject-matter of a suit pending the suit."

In the present case, the specific objection of a want of proper parties, has not been made either at the hearing or in this Court. If it had been, it could not be sustained, if the case cited is to be regarded as an authority. Here, according to the view taken, the complainants are trustees for King to the amount of his interest, and being the only proper parties when the bill was filed, are entitled to a decree not only for what is due them in their own right, but for what is legally due to them for King's benefit.

Whether we consider the decree with reference to its amount or the parties to it, it is free from error, and must be affirmed.