## Case No. 11,697.

### REMNANTS IN COURT.

[Olc. 382.] [1]

District Court, S. D. New York. Aug., 1846.

PRACTICE IN ADMIRALTY—REMNANTS—HOW TREAT-
ED—MARITIME LIENS—MORTGAGE.

1. The surpluses or remnants of proceeds on the sale of a ship under the process of the court, are a representative of the ship, and subject to claims which might be enforced against her in rem.

2. Services or supplies furnished a domestic vessel in her home port, at the request of the master and owner, to fit her out for a foreign voyage, and to be paid for on her return to her home port, acquire no lien or privilege upon the ship under the act of this state. 2 Rev. St. 405, § 2. They are personal credits to the parties. Such debts, accordingly, have no privilege of payment as against remnants in court.

3. A mortgage debt against a ship will, in marshalling her proceeds for distribution. be entitled, after satisfaction of privileged and lien debts, to payment as against the owner.

4. Quere, whether the court can take cognizance of debts of the ship-owner which do not possess maritime privileges, and apply a distributive part of remnants in the registry to them?

[Cited in Hill v. The Golden Gate, Case No. 6,491.]

In admiralty. Tyson & Judah filed their libel and petition, seeking to have the proceeds or remnants of the ship Panama paid to them in satisfaction of their debts, and to prohibit the payment of the moneys to Cameron or Quincy, the claimants in the action which produced the remnants. The ship was condemned in April last—The Panama [Case No. 10,703]—to be sold in satisfaction of a bottomry loan, and after fulfilling that decree, there are remnants of her proceeds in court undisposed of. These applicants claim that balance, alleging they have a prior equi-

ty to it over Cameron and Quincy, who also claimed it against each other. The petitioners allege there is due them a large sum for services and supplies furnished by them to the ship in this port, where she is owned, to fit her out for a voyage to Stettin; and that the day she was ready to sail and about to get under way, she was arrested in the action on the bottomry hypothecation, and that thus the voyage was broken up. They also allege that Quincy was the real owner of the ship, and that they are entitled to her proceeds in preference to him. Quincy opposed the application, insisting that the petitioners' debts never possessed any lien or privilege upon the ship or her proceeds. The debts of the petitioners arose from services, supplies, materials, &c., furnished by them to the master and owner of the ship whilst she was preparing for the voyage above mentioned, on an agreement that payment therefor should be made on the return of the ship to this port. It was also urged, in opposition to the petitioners, that the mortgage debt had a privilege of payment against the remnants of the ship in court, and that the claims of the applicants were no lien on the ship or the remnants, and not within the jurisdiction of this court. The essential facts of the case are sufficiently stated in the opinion of the court.

S. Judah, for petitioners.
F. B. Cutting, for Quincy.

BETTS, District Judge. The supplies, satisfaction for which is claimed in this proceeding, were purchased by the master and owner of the ship, on an agreement that payment should be made after her return from the voyage then expected to be made to Stettin. The Panama [supra]. She was fitting out for a voyage to that port, and after getting ready for sea and about to sail, she was arrested by a bottomry creditor, and was condemned to be sold, and the voyage was thus broken up. Cameron, her master and owner, resided in this port, and the mortgage upon her to Quincy was executed and duly registered here. It is contended by the petitioners that they are, by means of the judicial sale, released from the terms of credit, and remitted to their original privilege or right of lien upon the vessel for the outfit supplied her. I think it plain that the debt due the petitioners had no privilege or lien upon the ship when she was arrested and sold in the bottomry action. The law of this state authorizing a lien upon domestic vessels, declares it shall cease immediately after the vessel shall have left the state. 2 Rev. St. p. 405, § 2.

The supreme court. in examining the effect of such lien, decided that it is to be regarded as waived. when the contract contains stipulations inconsistent with the lien, or from which it may be fairly inferred that a waiver was intended, and the personal re-

---

sponsibility of the party only relied on. Peyroux v. Howard & Varion, 7 Pet. [32 U. S.] 344. And the court held the lien waived in that case under circumstances connected with the terms of the law of Louisiana, far less forcible and direct to raise the presumption of waiver than in this case. When the credit is expressly given to the master or owner, the claims of material men never become a lien on the vessel. The General Smith, 4 Wheat. [17 U. S.] 438. It is manifest here that the goods were furnished with the intent and for the purpose of having the ship leave the state before payment could be required by the furnishers; and although the after abandonment of the voyage may rescind the credit so as to leave an immediate right of action against the owner and master for the price of the goods furnished, it does not affect the character of the bargain of purchase and sale, which was without regard to the statutory liability of the ship, but rested wholly upon the personal credit given the master and owner by the contract. The purpose of the statute is to protect mechanics, material men and furnishers, who contribute their services or property to the wants of a domestic vessel in her employment from losses they would be exposed to by leaving her the ability to depart from the place of credit without satisfying her debts. It is a power to restrain her departure which the act bestows, thus placing the vessel in legal pledge to the creditor when the credit has been given to her whilst she remains in port, but to cease entirely on her leaving it for a foreign port. The act imports that the privilege is given in relation to debts payable at the time the services or supplies are furnished the vessel, and it plainly negatives all implication that the lien reaches contracts of credit expressly extended beyond the term limited by the law. In such case the right of the creditor rests in his contract, and not in the remedies provided by the statute. He deals with the master or owner upon their personal responsibility alone, and not in view of privileges granted by the statute. Those privileges are clothed with limitations as to their continuance, inconsistent with the terms of this contract, which, when once lost, cannot be recalled and reinstated. The Stephen Allen [Case No. 13,361].

The petitioners are not, in my opinion, entitled to come in upon this fund under any lien or privilege attaching to it which can be recognised by this court. They stand before the court singly in the character of creditors of the master and owner of the ship.

It is further urged, that in marshalling and distributing surpluses and remnants remaining in the registry, the court, in its discretion, may look at the substantial equity and justice of the claims to the fund, and especially as against the owner, withhold them from him, and award them to his general creditors. And that in this instance that claim to preference in favor of the petitioners is im-

pressively equitable, and approximates to a legal lien, their debts arising from services and supplies to the ship, which added to her value, and augmented this fund produced by her sale. They deny the right of Quincy to the character of mortgagee in this proceeding, insisting that upon the evidence before the court he was the real owner of the ship, and in the distribution of the fund must be limited to the equity of owner alone.

It was admitted by Quincy, in his answer to the bill filed by the bottomry holder, that the bill of sale of the ship taken in his name, although absolute on its face, was received and held by him only as security for a loan of money to Cameron. The decree, in this cause, treated him as mortgagee, and held the ownership of the ship to be in Cameron. As between them, accordingly, Quincy's standing in court is that of creditor alone, and the court will not, in this collateral proceeding, change the position or relationship of the parties to the action towards each other, or the proceeds of the suit. If the decision of that point may be re-examined here, it must be done directly, and by a formal suit, which will put the merits of the question in issue, and afford the parties to be affected by its decision the opportunity for a full hearing here, and the privilege of an appeal to the higher tribunals. Neither of those ends are attainable in an incidental motion or petition upon which no formal answer or issue is made. The action of the court on this application is both discretionary and final. In my judgment the petition ought not to prevail on that ground, and Quincy must be considered, in this state of the case, entitled to have his mortgage debt satisfied out of the proceeds, it being equitably a lien upon them as the representative of the thing mortgaged. Moses v. Murgatroyd, 1 Johns. Ch. 119; Cook v. Mancius, 5 Johns. Ch. 89; The Lewis [Case No. 8,310]; [Sheppard v. Taylor] 5 Pet. [30 U. S.] 675; Brackett v. The Hercules [Case No. 1,762]; Harper v. The New Brig [Id. 6,090]. And the demand of the petitioners not being entitled to a lien on the ship (White v. Carpenter, 2 Paige, 217) cannot now come in with a priority of privilege against the mortgage creditor, and in that condition would not be recognised in the English admiralty as entitled to payment at all out of the remnants in the registry (3 Hagg. Adm. 129; 1 Ves. Sr. 154).

As the mortgage debt will absorb the remnants in court, it is unnecessary to consider the point discussed at the hearing, whether an unprivileged debt owing by the owner of a ship in the American courts, can be satisfied by order of the court, out of remnants in court from her sale, belonging to the owner; that is, whether the court has an equitable authority to apply such moneys to a general creditor of their legal owner, contrary to his desire and direction.

The application of the petitioners is de-

nied, and the proceeds must be applied to the mortgage debt. There being no question before the court as to the amount of the mortgage debt, no reference to a commissioner is necessary.