The Chancellor.
On the first of May, 1819, Hannah Wells, under whom the complainant holds his title, was seized and possessed of the mill seat on the Assanpink creek, then known by the name of “ the Trenton mills,” now the "Eagle factory." Plunket E. Glentworth was then the owner of a mill seat a short distance above, on the same stream, and also of a tract of land adjacent to his mill seat. Plunket E. Glentworth and his wife, by their deed, bearing date the said first day of May, for and in consideration of the sum of $1600, granted to the said Hannah Wells, her heirs and assigns, all their right, title, and interest to the said water right and privilege; but with the proviso, that if in using that right and privilege in raising the water in the mill pond of the said Hannah Wells, the lands of the said Glentworth, lying adjacent to the mill seat, should be overflowed or damaged in ordinary times, that then the said Hannah Wells, her heirs or assigns, should pay to the said Glentworth, his heirs or assigns, the sum of one hundred and eighty dollars, for each and every acre so overflowed or damaged, which sum should be deemed and taken as full satisfaction of such overflow and damage, and should never be demanded or paid again for the same land so overflowed or damaged.
By the death of Mrs. Wells, the title to the mill and all these water rights became vested in her sons, Charles M. *60 and Lamar G. Wells, as her devisees. On the 31st of December, 1822, Glentworth and wife, by their indenture of lease of that date, leased to the Wells’, for the term of fifty years, at an annual rent of $132.50, four acres of land adjacent to the mill seat conveyed by the deed of the first of May, 1819. This lease was never recorded.
On the 14th of July, 1827, Glentworth and wife mortgaged all his lands on the Assanpink creek to Elizabeth Marshall, to secure the payment of $4000; and on the twentieth of October, 1829, they executed a second mortgage to Elizabeth Marshall, to secure the further sum of $1000. These mortgages were afterwards assigned to the Trenton Bank.
On the-day of-182 — , Charles M. and Lamar G. Wells conveyed to Lewis Wain the Eagle factory and all the water rights and privileges which they were seized of under Hannah Wells.
On the 24th of January, 1831, Glentworth and wife, by their deed, after reciting the conveyance to Hannah Wells of the 1st of May, 1819, and the lease to O. M. and Jj. G. Wells, of the 31st of December, 1822, and that the rights and property therein and thereby leased and conveyed had become vested in Lewis Wain, and that the said Glentworth and Wain were • desirous that those rights and privileges which had become thus vested in Wain should be surrendered, and others substituted, and the yearly rents mentioned in the several indentures should also be surrendered, for a sum certain in lieu thereof, did, for and in consideration of the sum of $1200, grant and sell to the said Wain all the water rights and privileges mentioned in the deed of lease to Charles M. and Lamar G. Wells, together with all the rights and water privileges attached to and belonging to the land which the said Glentworth owned on the Assanpink creek, and the full and perfect right to use the same, and flow back the water of the Assanpink creek from the mill, and in and upon the lands of the said Glentworth; and the said Glent *61 worth, and his wife did, in and by the said deed, acknowledge that the said sum of $1200 was received by them in lieu of and in full satisfaction of the yearly rents, and all other claims and demands arising by, from, and under the said lease.
The Trenton Bank, as the assignee of the Marshall mortgages, filed a bill for the foreclosure and sale of the mortgaged premises. Lewis Wain was not made a party to this bill. The only defendants were the executors, devisees, and heirs at law of Plunket F. Glentworth.
The mortgaged premises were sold by virtue of a decree in that suit, and after paying off the mortgages there was a surplus of the proceeds of sale of nine hundred and sixty-one dollars and nine cents, which was paid over to the defendants in the suit. The Trenton Bank was the purchaser at the sale, and a deed was made to them of the mortgaged premises. Subsequently the bank sold the premises to Philemon Dickinson and others. They allotted the tract into parcels, which they from time to time sold to various individuals; and one tract, lying along and contiguous to the creek, is now owned by one of the defendants, John Yard, jun.
In July, 1850, John Yard, jun., brought an action on the case, in the Circuit Court of the county of Mercer, against the complainant, to recover damages for the overflow of his said tract of land by means of the dam of the Eagle factory.
Upon the documentary case, as I have stated it, and some facts which will be referred to incidentally in this opinion, the complainant filed his bill, praying that he might redeem, if his title was subject to the Marshall mortgages, or that he might have such other relief as he was entitled to, to secure his right of overflowing, and in the mean time to enjoin further proceedings in the suit at law. The land which was covered by the Marshall mortgages is held, in separate tracts, by some nineteen different .owners, all of whom are made defendants to this suit.
*62 Both parties claim under Plunket P. Glentworth. The defendant, Yard,, claims through the Marshall mortgages; the complainant, by a title superior to the mortgage title, and also under equities subject to that title.
And first, let us see whether the complainant has any title superior to, and which will override the mortgage title. The defendant, Yard, has the fee simple in the premises. All that the complainant claims is an easement, a right to overflow the land at his pleasure, by damming the Assanpink to supply his mill with water.
By the indenture of the 1st of May, 1819, from Glentworth and wife to Hannah Wells, she acquired the right to overflow the lands afterwards mortgaged to Elizabeth Marshall, subject to the payment of one hundred and eighty dollars an acre for so much of the land as should be so overflowed; and this right was secured to the grantee without forfeiture for non user. But this deed was not recorded until after the recording of the Marshall mortgages ; and the rights of the grantees under that deed must be subject to these mortgages, unless it can be shown that the mortgagee took her mortgages with notice of the prior unrecorded deed. The bill charges such notice. It alleges that, at the time of the giving of the mortgages, the water rights and privileges under the deed of 1819 were openly exercised and enjoyed, and that at that time, and for a long time before, the water flowed back upon the premises, so as visibly to submerge certain low parts of the same, and that from this circumstance the complainant is led to believe that the mortgagee knew of the grant of the right to overflow. It is true, if a person purchase an estate knowing it to be in the possession of tenants, he purchases subject to their estates. Story’s Eq. § 399, and note 2. But the purchaser must have notice of the possession before he is bound to inquire into the estate. If the possession is of such a character that .it is visible and notorious, then he will be presumed to have knowledge of the possession. But if the possession *63 is such as from its very character is not visible and of common report, and would not attract the attention of an observing man, then it is not such a possession as is calculated to provoke inquiry and put a party upon his diligence, and a bona fide purchaser ought not to be concluded by it. Whether this land was overflowed prior to the execution of the Marshall mortgages, so as to render such overflow visible, is left quite uncertain by the evidence.
The same observations are applicable to the lease of the 81st of December, 1822. That lease was never recorded, and it is not alleged that Elizabeth Marshall had any actual notice of it. Besides, from the best examination I have been able to give of the evidence, I do not believe that the lease has any reference to the land now owned by the complainant. It is a lease for fifty years of the mill seat, and eight acres of laud adjacent, described by metes and bounds ; and although it is described in a subsequent deed as a demise for the mill seat and right to overflow the lands of the forties of the first part thereto, it grants no such right, except as to the eight acres adjacent to the mill seat. The premises now owned by the defendant, Yard, is no part of the eight acres.
I do not consider, however, these questions arising upon the deeds referred to as of much importance in settling this case. Whatever rights could have been acquired under them, even if they had been promptly recorded as against the subsequent mortgage, those rights were surrendered and absolutely extinguished by the deed of the 24th of January, 1881, from Glentworth and wife to Wain, which was four years subsequent to the first mortgage and two years after the second mortgage. By the deed of January, 1881, all the rights and privileges granted by the indentures of May, 1819, and of December, 1822, and which were then vested in Lewis Wain, were surrendered, and others were substituted in their stead. The right of Wain to the mill seat, and to overflow the lands of the grantors, as the same had been acquired by the previous *64 deeds, was extinguished, and the right of the grantors to the yearly rent was released. As a substitute for these rights, as the deed expresses it, Glentworth and his wife, for a consideration of $1200 then paid, granted to Lewis Wain the right to overflow all Glentworth’s lands lying along the Assanpink creek. This included the land embraced in the Marshall mortgages. By this deed, Wain acquired no more right to the overflow than was then already vested in him. It made the payment of $1200 a full consideration for those rights, in lieu of the rents reserved and of the covenants by which he was bound.
It was insisted, on behalf of the complainant, that the rights of Wain under the deed of 1881, being substituted for those under the deed of 1819, and the same right of overflowing being reaffirmed and secured to him, which he possessed before, if the Marshall mortgages were subject to that right of overflow, as secured by the deed of 1819, in equity, they should continue subject to it.
But it will be seen, at a glance, that this would be doing great injustice to the mortgagee. If Mrs. Marshall took her mortgages subject to the deed of 1819, while they are to bear the burthen of the encumbrances, they are also entitled to all the relief which can be derived from the encumbrance itself. By that deed, the grantee paid to the grantor sixteen hundred dollars for the privilege of backing the water of the Assanpink upon certain lands of the grantor, and the grantee acquired the right to back water upon and overflow other lands of the grantor (which were the lands subsequently included in the mortgages), subject to the payment $180 an acre for every acre overflowed. Now, after the execution of the mortgages, the payment of $180 an acre for overflowing, enured to the benefit of the mortgagee. The mortgagee held subject to this right of overflow, but was entitled to the benefit of the remuneration for it secured by the deed. And yet by the deed of 1831, subsequent to the mortgages, the mortgagor confirms the right to overflow the lands which *65 lie liad conveyed away by mortgage, extinguishes the right then in the mortgagee, of demanding and receiving $180 for every acre that might thereafter be overflowed, and receives $1200 for a right which, with his lands, he had mortgaged for $5000. If the deed of 1831 can he looked upon, in equity, as a mere substitute for that of 1819, and the mortgages subject to it, then the mortgages, by this equity, have become lessened in value $1200. That cannot he. By the deed of 1831, the right of Wain to overflow the mortgaged premises under and by virtue of any previous deeds was extinguished, and he thereafter held the right subject to the Marshall mortgages.
What, then, was the equity of Wain under the deed of 1831, in reference to the prior mortgages held then by the Trenton Bank, as the assignee of Elizabeth Marshall ? It was the equity of redemption — the right to redeem the mortgages, and extinguish the mortgagee’s title. There is but one of two ways by -which he could be deprived of that right — by possession by the mortgagee under his mortgage for a period of twenty years, or by a decree of this court foreclosing his right to the equity of redemption. Possession under the mortgage is not alleged; hut it is insisted that the equity has been foreclosed by a decree of this court.
At the time the hill was filed upon the Marshall mortgages for a foreclosure and sale of the mortgaged premises, Wain was the owner of the right now asserted by the complainant. Wain was not a party to the foreclosure suit. His equity of redemption was not foreclosed by that decree. No one was hound by that decree, nor was any one’s rights affected by it, except the rights of those who were parties to the suit. I had occasion to declare what the law was, and how the right of the equity of redemption was affected when a party entitled to that equity was not a party to the decree, when this case was before me on a motion to dissolve the injunction. 1 Stockton 358. In the case of Canby v. Ridgway and others, decided by the *66 lat'e Chancellor Williamson, in October term, 1826, and which was affirmed in the Court of Appeals, May term, 1829, Ridgway, holding the first mortgage, filed his bill against the mortgagors without making any of the encumbrancers parties to the suit. He obtained a decree, and sold the mortgage premises under it, which brought more than the amount due on the Ridgway mortgage: the surplus was paid to the mortgagor. The bill was brought by Canby to set aside the decree, and praying that Ridgway might be decreed to pay the complainant, from the proceeds of the sheriff’s sale, the amount due him on his mortgage. The bill was dismissed, on the ground that Canby, having been no party to the suit brought by Ridgway, he was in no wise affected by the decree; that his rights under his mortgage remained unimpaired, and, consequently, he could maintain no suit against Ridgway personally for an account or otherwise. The cases to sustain the Chancellor in the position are numerous. Bishop of Winchester v. Beaver, 3 Ves. 314; Palk v. Lord Clinton, 12 Ves. 58; Sherman v. Cox, Rep. in time of Finch 406, S. C; 3 Ch. Rep. 83, decided in 1674; Griswold v. Marsham, 2 Ch. Ca. 170; Lomax v. Hide, 2 Van. 185; Draper v. Jennings, 2 Vern. 518; Godfrey v. Chadwell, 2 Vern. 601; Morrel v. Western, 2 Vern. 663; Haines et al. v. Beach et al., 3 Johns. Ch. Rep. 459; Cook et al. v. Mancius and wife, 5 Johns. Ch. Rep. 89; Cripp v. Heath, 7 Vern. § 2, f. 2; Draper v. The Earl of Clarendon, 2 Vern. 317; Hobart v. Abbott, 2 P. Wms. 643; Fell v. Brown, 2 Bro. 276; Needler v. Deeble, 1 Ch. Cas. 299; Gore v. Stackpole, 1 Dow. 31; Mondey v. Mondey, 1 Ves. & B. 223. In the case of Cook v. Mancius, 5 Johns. Ch. Rep. 92, a judgment creditor, who had obtained his lien pendente lite, was permitted to redeem. The mortgagee obtained his decree, and sold the property under it, and it brought 920 dollars more than enough to pay the mortgage. The complainant knew of the judgment when he obtained his decree, and yet, by his decree, the surplus was ordered to be paid to the *67 mortgagor. The ease is no authority for the doctrine, that it is necessary to make one who becomes an encumbrancer pendente lite a party. The complainant knew of the judgment, and the Chancellor looked upon the case as one where the complainant had attempted to take advantage of the judgment creditor, and to deprive him of his right to the surplus, which clearly belonged to him.
There is no principle better settled upon authority, or better supported by sound reasoning, than that a party entitled to the equity of redemption is not affected in his rights by a decree in a suit to which he is not a party. Wain’s equity of redemption, then, remained unimpaired notwithstanding the decree upon the Marshall mortgages; and this complainant, as his grantee, is entitled to the equity of redemption in as full and complete a manner as his grantor, Lewis Wain, was.
The question is, to what relief is the complainant entitled under the peculiarities of the case ? There is much embarrassment attending it, but not in consequence of any act on the part of this complainant, or of those under whom he holds his title. Had Wain been made a party to the foreclosure suit, it is evident, from the facts appearing in the ease, there would have been no embarrassment. The Trenton Bank, as the owners of the mortgages, filed the bill to foreclose. The bank became the purchaser, and permitted the surplus to be paid over to the mortgagor or his legal representatives. If Wain had been made a party to the suit, the court would have protected his rights by decreeing that the part of the mortgaged premises in which he was not interested should be first sold, as it is apparent that all the land was not capable of being overflowed; and in that case the mortgage might have been satisfied without interfering with Wain’s rights. He was entitled to the surplus, which, by the act of the bank, was paid to the mortgagor. When the foreclosure suit was brought, the bank had full notice of Wain’s rights. Would this court have permitted the Trenton Bank, after having foreclosed *68 their mortgages, and of their own free will paid a surplus of nine hundred dollars to the mortgagor, to turn around and to prosecute a suit at law against Wain for exercising his right of overflowing ? It would certainly have been inequitable that they should have been permitted to maintain such a suit. This defendant stands in no better situation in that respect. When the Trenton Bank conveyed the premises, they placed a clause in the deed, to the effect, that the conveyance was made subject to whatever rights Wain might have. The grantees of the bank took their deed with full knowledge of Wain’s equities, and the title has been transmitted until it has reached the complainant and the defendant in this suit with the equities unimpaired. In Cook v. Mancius, 5 J. C. R. 89, the Chancellor remarks, that equity attaches great importance to notice of another’s claims or pretensions, and generally chai’ges a party, whether he be a purchaser or otherwise, who acts regardless of such notice with all the duties that such claims impose. If the Trenton Bank, under the circumstances, would not have been permitted to disturb the complainant’s rights, and treat him as a trespasser, neither ought their assignee, with lull notice of all the circumstances. It appears to me very clear that a court of equity would not have permitted the Trenton Bank, as the purchaser under that decree, to treat Wain as a trespasser. It is true Wain had an equity only subject to the mortgages held by the bank. But Wain was in possession. The mortgages were paid, and the mortgagee, instead of foreclosing the equity of Wain, had taken a decree, and sold subject to it. But I think the grantor does not stand in as favorable a position now as the Trenton Bank did. The lapse of time has so affected the rights of the parties as to make it very embarrassing to enforce these rights as they originally existed. If the Trenton Bank had brought the' suit which the defendant, Yard, has instituted for damages, a court of equity would have enjoined the suit, upon the defendant’s paying the amount due upon the mortgages *69 and interest; for that Wain, and whoever holds under him, has a right to redeem, is beyond dispute. But at the time of filing the bill it was then some eighteen years since the sale under the decree. The bank, after retaining the property a short time, sold it. There are now some eighteen owners of this land, which has been subdivided into as many different tracts, who are now before the court. The complainant has brought them here for the purpose of redeeming them. The complainant is entitled to protection. The court must protect him against the suit at law brought by the defendant, Yard, by injunction or by permitting him to redeem the Marshall mortgages. Yard owns but a small part of the property. The other defendants do not wish to be redeemed. On account of the disposition made of the property, the embarrassment that would attend the taking of the account necessarily involved in a decree for redemption are very great. Yard does not, by his answer, assent to a redemption, but denies the right of the complainant to redeem. He puts himself solely upon his legal rights, and all he asks is, that the injunction may be dissolved, and he be permitted to prosecute his suit at law. It is possible that a decree might be made to redeem Yard without disturbing the other defendants. But there are great difficulties attending such a decree. It would be necessary for a master to ascertain the comparative value of the property owned by Yard and the rest of the property in 1834, the value of the possessions ofthe respective parties since that period, and of the possession of those under whom they hold. The character and situation of the property are such as to make the particulars of such an account more a matter of guesswork than of fair calculation upon certain and satisfactory data. All these embarrassments have been occasioned by Yard, and by those under whom ho holds. The complainant has certain rights. He was in the peaceable possession of them when Yard purchased. Yard purchased with full notice. Under all these circumstances, this court will not permit Yard to treat the com *70 plainant as a trespasser. It will protect Ms equity. The hill offers to redeem. The defendant does not acquiesce, and it appears to me proper that the court should interfere, and prevent the complainant being treated as a trespasser by the injunction of this court.
The injunction is made perpetual.